546 A.2d 1173
**COMMONWEALTH of Pennsylvania**
v.
**David CARTER, Appellant.**
Superior Court of Pennsylvania.
Submitted May 16, 1988.
Filed Aug. 16, 1988.

Alonzo Burney, McKeesport, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before OLSZEWSKI, WATKINS and CERCONE, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence following appellant's conviction for first degree murder and robbery. Appellant was sentenced to a term of life imprisonment on the first degree murder conviction with a concurrent indeterminate sentence of five-to-ten years imprisonment on the robbery conviction. For the reasons stated below, we affirm the judgment of sentence.

The facts giving rise to appellant's convictions may be summarized as follows. On September 7, 1985 the body of 82 year-old Clyde Jackson was discovered in his apartment in the Hill District section of Pittsburgh. An autopsy revealed that Mr. Jackson had been beaten with a blunt object which caused twenty-three lacerations on his head, multiple abrasions and contusions on his extremities and fractures of both arms. Death resulted from multiple blunt force trauma to the head and limbs with the victim's vascular and cerebral atherosclerotic disease being a marked contributing factor.

A police investigation ensued and culminated with the questioning of appellant. Appellant, aware that the police

were seeking him, contacted them and requested they come to the emergency room of Central Medical Hospital where he was being treated for injuries received in a fight. Upon a determination by hospital personnel that appellant would not be admitted to the hospital, appellant voluntarily accompanied Detective Anthony Condemi, of the Pittsburgh Police, to the Public Safety Building. Upon arrival at the Public Safety Building, appellant was advised of his *Miranda*[1] rights and executed a waiver thereof. After initially giving the police a false statement, appellant confessed to the beating of Mr. Jackson. Appellant was subsequently charged with one count of robbery and one count of criminal homicide.[2]

Prior to trial appellant filed a suppression motion seeking to exclude inculpatory statements and all evidence derived therefrom. A hearing was held on this motion before the Honorable Raymond A. Novak of the Allegheny County Court of Common Pleas, Criminal Division. Judge Novak denied appellant's motion in part and granted it in part.[3] Thereafter, appellant waived his right to a trial by jury and proceeded to a bench trial with Judge Novak presiding. A verdict was entered by the court on March 13, 1986 finding appellant guilty of first degree murder and robbery.

Post-trial motions were not timely filed; however, the court granted appellant's motion to extend time to file post-trial motions. Thereafter, appellant filed a motion for new trial and/or in arrest of judgment. Subsequent to the

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Commonwealth subsequently acquired the following evidence which was presented at trial. A fingerprint lifted from an envelope recovered from the victim's apartment correlated positively with known fingerprint exemplars obtained from appellant. Shoe print patterns found at the scene correlated positively with the shoes appellant admitted to wearing the night of the murder. Appellant's clothes, which he had been wearing the night of the murder, bore blood stains consistent with the victim's blood type and inconsistent with appellant's blood type.

3. The trial court held that appellant's oral statement was voluntary and therefore admissible, while the taped statement was inadmissible because of appellant's invocation of his right to counsel.

filing of this motion, appellant filed *pro se* a petition alleging ineffective assistance of counsel and requesting court appointed counsel. Appellant was appointed his present attorney who filed post-trial motions and supplemental post-trial motions *nunc pro tunc* on appellant's behalf. These motions were denied by Judge Novak who subsequently imposed sentence on appellant. This timely appeal followed.[4]

Appellant presents the following eight issues for our review:

I The trial judge erred in not suppressing the admissions/confessions of Appellant and in not suppressing all evidence obtained as a result therein.

II The trial judge erred in finding that Appellant was capable in waiving his right to a trial by jury.

III The trial judge erred in admitting photographs into evidence that were inflammatory and were not relevant to aid the trial judge in understanding the facts.

IV The prosecutor erred in arguing the law on felony murder regarding intent to kill preceding the intent to rob.

V The trial judge erred in finding Appellant guilty of robbery when there could only be speculation by the fact finder as to when the said [sic] Appellant formulated the intent to commit a theft; before, during, or after the killing of the victim.

VI The trial judge erred in finding the Appellant guilty of murder in the first degree based upon the evidence presented on the alcoholic state of Appellant before and after the killing of the victim.

VII The trial judge erred in ignoring the case law on the felony murder.

---

4. At this point we would like to commend the Commonwealth on its excellent presentation of the procedural history, facts and legal arguments pertinent to this appeal. The Commonwealth's concise, yet comprehensive, presentation of the issues and erudite statement of the law combined to provide this Court with a model appellate brief.

VIII Trial counsel for Appellant was ineffective and said errors prejudiced the outcome of the case.

Brief for appellant at Statement of Questions.

We now proceed to appellant's first claim that the trial court should have suppressed his confession and all evidence obtained as a result thereof. Specifically, appellant contends that the evidence at the suppression hearing showed that he was undergoing medical treatment when he was taken into custody and that he possessed only a sixth-grade education. Appellant further contends that the Commonwealth failed to establish that he understood and validly waived his constitutional rights. Before addressing the merits of appellant's claim, we set forth our standard of review in an appeal from the determination of a suppression court as reaffirmed by *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168, *cert. denied Hubble v. Pennsylvania*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986).

> On review, our responsibility is to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

*Id.*, 509 Pa. at 503–504, 504 A.2d at 171.

> "If the suppression court has determined that the evidence is admissible, 'this Court will consider only the evidence of the prosecution's witnesses and as much of the evidence for the defense as fairly read in the context of the record as a whole, remains uncontradicted.' *Commonwealth v. Kichline*, 468 Pa. [265] 264, 280, 361 A.2d 282, 290 (1976); *see Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S.Ct. 1860, 1878, 6 L.Ed.2d 1037 (1961) (Opinion of Frankfurter, J.)" *Commonwealth v. Brown*, 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977).

*Hubble*, 509 Pa. at 503–504, 504 A.2d at 171.

In determining whether a confession, obtained as a result of a custodial interrogation, is admissible, the accused's *Miranda* rights must have been explained to him and he must have knowingly, voluntarily and intelligently

waived these rights. *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987). Further, the Commonwealth must show by a preponderance of the evidence that the confession was voluntary. The test for determining whether the confession was voluntary and the waiver of the *Miranda* rights was valid is a totality of the circumstances. *Id.,* 514 Pa. at 481–483, 526 A.2d at 305. Factors which must be looked to in reaching this determination include the following: the duration and methods of interrogation, the conditions of detention, the manifest attitude of the police toward the accused, the accused's physical and psychological state, and any other conditions which "may serve to drain one's powers of resistance to suggestion and undermine his self-determination." *Id.,* 514 Pa. at 481–483, 526 A.2d at 305, *citing Commonwealth v. Crosby,* 464 Pa. 337, 346 A.2d 768 (1975) (citations omitted).

■ The facts giving rise to appellant's confession and the obtaining of the physical evidence were summarized by the trial court as follows:

In this case, Detective Anthony Condemi testified at the suppression hearing that the defendant voluntarily accompanied him to the police station for questioning (N.T. 3/4/86, p. 10). After arriving at the police station, Detective Condemi requested that the defendant execute a Pre-interrogation Warning Form (Commonwealth Exhibit 2). The form, which outlines the defendant's constitutional rights, was read and explained to the defendant. The defendant indicated that he understood his rights and he signed the form (N.T. 3/4/86, pp. 12–13). After signing the form, the defendant gave an oral inculpatory statement indicating his involvement in the death of Clyde Jackson (N.T. 3/4/86, p. 15). The defendant was then arraigned on the charges of Criminal Homicide and Robbery (N.T. 3/4/86, p. 17). After arraignment, the detectives, at the direction of the defendant, went to two areas and retrieved certain evidence (i.e., a tire iron and a pair of tennis shoes) (N.T. 3/4/86, p. 18). When they arrived back at the police station, detective Condemi

requested that the defendant put his statement on tape. The defendant refused saying that he wanted to wait until his father arrived with a lawyer (N.T. 3/4/86, pp. 18–19, 43–45).

Trial court opinion 9/28/87, pp. 6–7.

Also pertinent to our review of appellant's claim is the following excerpt from the testimony of Detective Condemi of the Pittsburgh Police:

(BY DISTRICT ATTORNEY):

Q Did [appellant] at any time in the execution of the waiver or during the interview indicate that he had any trouble understanding you or Detective Serafini?

A No, sir.

\* \* \* \* \* \*

Q At any time did he indicate to you that he was having any problems with his physical condition or having any medical problems that were bothering him?

A No, sir.

Q Did he indicate to you at any time that he was under the influence of any alcohol or drugs, whether prescribed or not, during the course of this interview.

A No.

Notes of testimony March 4–7, 1986, pp. 20–21.

The above quoted testimony, in conjunction with the rest of the evidence presented at the suppression hearing, supports the findings of the trial court that appellant's waiver of his *Miranda* rights and resulting confession were voluntary and thus admissible. Appellant's contention must therefore be dismissed as meritless.

The appellant next contends that the trial court erred in determining that he was capable of waiving his right to trial by jury. Appellant asserts that he has a very low I.Q., that he only has a sixth-grade education and that the questioning of appellant by the trial judge indicates that "it was obvious that the trial judge had serious doubt regarding the understanding by the appellant of the waiver of the jury trial which he so definitely needed." Appellant's brief at

Argument II. This contention is completely lacking in any merit.

The following is an excerpt from the colloquy engaged in by the trial court and appellant:

COLLOQUY BETWEEN COURT AND DEFENDANT:

"Q What is your name?

"A David Carter.

"Q How old are you, David?

"A 22.

"Q How far did you go in school?

"A Sixth grade.

"Q Do you read, write and understand English?

"A Somewhat.

"Q You understand me now?

"A No.

"Q You certainly speak English well enough?

"A I manage.

"Q Now, David, you're charged with criminal homicide.

"THE COURT: The maximum term in prison would be life, would it not, Mr. Conrad?

"MR. CONRAD: Correct.

"Q So you understand that you face a maximum life term in prison as a result of that charge?

"A Yes.

"Q I'm not telling you what your sentence will be, I'm just telling you what the maximum is. My purpose in doing so is that you understand the importance of these decisions.

"A Yes, I do.

"Q You're charged with robbery. That carries a maximum term in prison of 20 years. Do you understand that?

"A Yes.

"Q Mr. Brennan indicates that you have been discussing with him the difference between a bench trial and a jury trial?

"A Yes.

"Q You understand that? I just want to make sure you understand a couple things. You understand that juries are made up of people who are called to this Courthouse every-day from all over the county. Their names are just picked out of a computer the same way you would pick names out of a hat. And that computer gets those names from the phone book, from welfare rolls and from just about every other list that the Court can get its hands on. Do you understand that?

"A Right.

"Q And so many people are called everyday. Chances are there are people who don't know you or don't know any-body involved in this case.

"A Right.

"Q You understand that in selecting a jury, you and Mr. Brennan would participate in the selection of the jury?

"A Yes.

"Q And he would ask you who you wanted on your jury and who you didn't want on your jury?

"A Yes.

"Q You understand that you could—I guess it would be twenty peremptory challenges?

"MR. BRENNAN: No, Your Honor, seven.

"THE COURT: Seven, oh, I see.

"Q There would be seven peremptory challenges, that is, seven people you could exclude from the jury just because you wanted to, you wouldn't have to give a reason, you understand that?

"A Yes.

"Q This particular juror comes up, you say I don't want them on my jury, you could exclude seven in that way. You understand that?

"A Yes.

"Q And anybody that you had reason to believe had prejudice against you, for instance, if somebody said that they knew the deceased in this matter, Clyde Jackson, they could be excluded too for cause in addition to those seven; do you understand that?

"A Yes.

"Q So anyone that knows one of the police officers, is related to one of the police officers, they could be excluded. Do you understand that?

"A Yes.

"Q You'd end up with 12 people to the best of your ability who would agree and swear to hear the evidence and make a fair decision. Do you understand?

"A Yes.

"Q Do you understand that the Commonwealth has to prove you guilty?

"A Yes.

"Q And you're still innocent of these crimes as of this time?

"A Yes.

"Q You understand that the Commonwealth has to prove you guilty beyond a reasonable doubt?

"A Yes.

"Q And do you understand that in a jury trial the Commonwealth has to convince all 12 jurors of your guilt beyond a reasonable doubt?

"A Yes.

"Q And in a bench trial the Commonwealth only has to convince one juror of your guilt, namely, the judge?

"A Yes.

"Q Do you understand the difference?

"A Yeah.

"Q` Well, as you discuss this with Mr. Brennan, I want you to consider the things which I have just mentioned about the difference between a jury trial and a bench trial. You have any questions of me?

"A No, sir.

"MR. CONRAD: Excuse me, if I may, Your Honor. I'd like one brief thing on the record. I think this is the appropriate time before we go off the record. In review of the court documents today I noticed that in our information on both of these charges we put on or about the 10th of September as the date of this particular killing. I would ask—or an incident, both in homicide. I would ask to amend the information at this time to the 7th, which our information actually at that time should have revealed to us, is a more proper date, on or about the 7th of September, due to the fact that when those charges are read to the jury, as some judges do from the information, that they are not confused.

"THE COURT: All right. Well, I would—Mr. Brennan, is there any prejudice—I suppose the 7th of September is on or about the 10th of September.

"MR. BRENNAN: Your Honor, there isn't any. If I had alibi evidence, there would be. But as I am not going to present alibi witnesses in this case, there isn't any at all.

"THE COURT: The information is in each case amended to read on or about the 7th of September as opposed to on or about the 10th of September.

"Okay, David. Mr. Brennan wants to discuss further decisions with you relative to this matter. We'll take a brief recess at this time.

"(Recess)

* * * * * *

COLLOQUY BETWEEN COURT AND DEFENDANT:

"Q David, before we took the recess, I explained to you the difference between a jury trial and a non-jury trial. You remember that?

"A Yes.

"Q And then I said I wanted you to discuss that thoroughly with Mr. Brennan and make a decision as to how you wanted to proceed?

"A Right.

"Q Have you had an opportunity to discuss that with Mr. Brennan?

"A Yes.

"Q Where did you discuss that?

"A In the bullpen.

"Q And have you made your mind up?

"A Yes.

"Q And what do you want to do?

"A Non-jury.

"MR. BRENNAN: Your Honor, If I might, briefly, if I could supplement to a certain extent for the record, I would indicate that I have discussed with my client the pros and cons of a bench trial and a jury trial and whatever else at various times. I've seen David on Saturday, saw him on Sunday, saw him today as well. I'm convinced that my client is well aware of the distinctions between a bench trial and a non-jury trial. He knows which rights he is waiving by a bench trial and he's frankly convinced that going bench trial in this instance is in his best interest.

"BY THE COURT:

"Q Are you waiving your right to have a jury trial?

"A Yes.

"Q Would you explain to me why you're doing this?

"A 'Cause I don't want a jury trial. Because I don't want a jury trial.

"Q Would you tell me a little bit more about why you do not want a jury trial?

"A Because I leave the decision up in your hands. I feel as though you'll either give me a fair decision or I have to deal with it.

"Q I can't hear you.

"A You'll either give me a fair decision or I'll have to live with it.

"Q So you understand, when I listen to the evidence, I'll apply the law to the evidence. The decision you get will be the decision that the law requires, do you understand that?

"A Yes, sir.

"Q That could go in your favor and that could go against you. Do you understand that?

"A Yes.

"Q Till I hear the evidence, I don't know how that decision is going to come out. Do you understand that?

"A Yes, I do.

"Q Now, has anyone told you that if you go non-jury, I'm going to decide the case in your favor?

"A No.

"Q You understand that I am sworn to hear the evidence and make the decision that I believe is consistent with the law?

"A Right.

"Q And nobody told you you're going to get any special break or anything like that?

"A No.

"Q You have any questions of me?

"A No.

"Q You have a clear head today?

"A Yes.

"Q No drugs or alcohol?

"A No.

"Q No mental illness?

"A No.

"Q And you understand everything that I've said to you?

"A Yes, sir.

110

"THE COURT: If ever I was convinced that anybody's waiver was knowing, intelligent and voluntary, I'm convinced in your case, and we'll accept your waiver. We'll begin tomorrow at 1:30.

(Tuesday, March 4, 1986. 3:42 p.m.)

Notes of testimony March 4–7, 1986, pp. 49–56.

▇▇ The right to a jury trial may be waived by a defendant if the waiver is knowing and voluntary. *Commonwealth v. Williams*, 310 Pa.Super. 501, 456 A.2d 1047 (1983). Before a waiver can be adjudged knowing and voluntary, however, there must be some indication that the defendant knows of the essential ingredients of a jury trial. These ingredients are: that the jury be chosen from members of the community, that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel. *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973). In the instant case, it is apparent from the record that the defendant was advised of the ingredients of a jury trial and that he understood these ingredients. This contention is, therefore, dismissed as meritless.

Appellant next contends that the trial court erred in admitting a photograph which was inflammatory and not relevant to the trial court's understanding of the facts.

▇▇ At the outset we note that the admissibility of photographs is a matter within the sound discretion of the trial court whose decision will not be overturned absent an abuse of discretion. *Commonwealth v. Yachymiak*, 351 Pa.Super. 361, 505 A.2d 1024 (1986). Instantly, the trial court found that the photograph in question, specifically a photograph displaying the victim's lacerated skull, was not inflammatory. We agree. We have examined the challenged photograph and note that while the photograph is not pleasant to view, it is not gruesome or repulsive. It simply displays the nature of the wounds sustained by the victim during the attack. The photograph is in black and white and there is no blood or gore discernable. Moreover, the factfinder at appellant's trial was a judge and not a jury. This factor is significant as:

a [trial] judge is sufficiently trained and knowledgeable in the law to realize that he may not allow the potentially inflammatory nature of photographs of a victim's body to sway his judgment.

*Commonwealth v. Batty,* 482 Pa. 173, 178, 393 A.2d 435, 438 (1978) *cert. denied sub nom. Smith v. Pennsylvania,* 440 U.S. 974, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979). We therefore dismiss appellant's contention as meritless.

■■■ Appellant's next allegation of error is that the prosecutor erred in arguing an incorrect standard regarding intent to kill in the felony-murder context. This error was brought to the trial court's attention and corrected before the court rendered its verdict. Initially, we note that appellant was convicted of first degree murder and not second degree murder.[5] With this in mind we fail to see, and appellant has failed to demonstrate, how the prosecutor's misstatement prejudiced him. This contention must therefore be dismissed as meritless.

Appellant next contends that the trial court erred in entering a verdict of guilty on the robbery charge when there was no evidence, just speculation, as to when appellant formulated the intent to rob or the intent to kill.

When presented with a claim that the evidence is insufficient to sustain the verdict, the test to be applied is as follows:

In reviewing the sufficiency of the evidence we view the evidence presented and all reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner. The test is whether the evidence thus viewed is sufficient to prove guilt beyond a reasonable doubt.

*Commonwealth v. Ferguson,* 358 Pa.Super. 98, 516 A.2d 1200 (1986) (citations omitted).

■■■ A person is guilty of robbery if, in the course of committing a theft, he inflicts serious bodily injury upon

---

**5.** Felony murder is graded as murder in the second degree. 18 Pa.C.S.A. § 2502(b).

another. 18 Pa.C.S.A. § 3701(a)(1)(i). Thus, the time of appellant's formulation of intent to commit theft is crucial when he has also inflicted serious bodily injury upon his victim. Instantly, appellant testified that he sought entrance to the victim's apartment for the purpose of using the telephone. Appellant further testified that the victim sought to deny him use of the telephone and struck him with a tire iron, whereupon appellant wrestled the instrument from the hands of the deceased and began beating him. Appellant then testified that he did not beat the victim for the purpose of finding out where he kept his money, but that the location of the money was blurted out spontaneously by the victim.

The Commonwealth, however, presented the testimony of Detective Condemi who stated that appellant informed the detective in his initial statement that he was aware that the victim kept money in his apartment and during the course of the fatal beating repeatedly asked the victim to show him the location of the money. Detective Condemi also testified that appellant stated that before the victim indicated where the money was, the appellant had been searching everywhere for it.

It is well established that the finder of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Rodriquez*, 316 Pa.Super. 203, 462 A.2d 1310 (1983). Further, in assessing the credibility of defendant's testimony, the factfinder is free to consider that defendant had a vital interest in the outcome of the trial. *Id.* Finally,

> It is well settled that it is within the province of the trial judge, sitting without a jury, to judge credibility of the witnesses and weigh their testimony. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). Consequently, credibility determinations are generally not subject to review. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982).

*Commonwealth v. Garcia*, 370 Pa.Super. 132, 136, 535 A.2d 1186, 1188 (1988).

■ Instantly, the trial judge, as factfinder, chose to believe the testimony of Detective Condemi. We find no error in this and are satisfied that the evidence presented at trial, when viewed in a light most favorable to the Commonwealth, is sufficient to prove beyond a reasonable doubt the elements of the crime of robbery.

Appellant further contends that the evidence was insufficient to sustain the judge's finding of first degree murder when there was evidence that appellant was intoxicated before and after the killing of the victim.

■ First degree murder is defined as a criminal homicide committed by an intentional killing. 18 Pa.C.S.A. § 2502(a). The term "intentional killing" is defined as a willful, deliberate and premeditated killing. 18 Pa.C.S.A. § 2502(d). The specific intent required for a first degree murder conviction may be negated by a defendant's intoxication. Specifically, in this regard, our Court has stated the following:

> " 'Evidence of intoxication, if believed, may operate to negate the intent necessary for conviction of murder in the first degree.' "
>
> ... "However, drinking and intoxication are not synonymous terms. A defendant must be overwhelmed or overpowered by alcohol to the point of losing his or her faculties so as to be incapable of forming a specific intent to kill before an act of murder will be reduced to murder in the the third degree."

*Commonwealth v. Stark*, 363 Pa.Super. 356, 363, 526 A.2d 383, 387 (1987), *appeal denied Commonwealth v. Stark*, 517 Pa. 622, 538 A.2d 876 (1988) (citations omitted).

■ In the case at hand, the trial court evaluated defendant's claim that his intoxication prevented him from forming the specific intent to kill. The trial judge explained his reasons for rejecting this claim in his opinion. We are impressed with Judge Novak's reasoning in this regard and see no reason to disturb his decision.[6]

6. Specifically, Judge Novak stated the following:

Finally, appellant contends that he was denied effective assistance of counsel for the following reasons:

(a) The educational level of Appellant was not presented through testimony or stipulation during the suppression hearing.

(b) No medical evidence was presented at the suppression hearing to support the medical condition and the alcohol condition of Appellant at the time of arrest.

(c) No testimony of witnesses was presented at the suppression hearing to support the alcohol condition of Appellant when said testimony was available at trial.[7]

(d) No sufficient interviews of Appellant to sufficiently prepare for trial.

(e) No request for recusal of the suppression judge when there was to be a non-jury trial.

We should also note that we carefully considered the defendant's theory that his intoxication prevented him from forming the specific intent to kill. However, we rejected the theory on several grounds. First, the defendant's recollection of the incident in his statement to the police was rather detailed, including the sequence of events once he entered the deceased's apartment, the number of times he struck the deceased, the movements of both him and the deceased during the struggle, and the location of the deceased's money. Secondly, after the incident, the defendant had the presence of mind to rip the telephone out of the wall and thereby prevent the deceased from contacting the police. Thirdly, immediately after he left the deceased's apartment, the defendant sought to protect his identity by disposing of the tire iron and his blood-stained tennis shoes. Fourthly, the defendant remembered that he encountered Mr. Satterwhite shortly after leaving the deceased's apartment. This evidence is proof of a clear-headed man, not a man whose thinking was clouded by the ingestion of alcohol and narcotics. For these reasons, we found the defendant's level of intoxication insufficient to negate the specific intent to kill necessary for a conviction for First Degree Murder. Accordingly, we affirm our finding of guilt of First Degree Murder.
Trial court opinion 9/28/87, pp. 18–19.

**7.** We believe that our discussion regarding appellant's challenge to the admission of his confession and Detective Condemi's testimony set forth at p. 7 *infra* establishes that this claim of ineffectiveness lacks arguable merit. It is therefore dismissed.

(f) Permitting the Appellant to testify when said testimony could be used by the prosecution to argue for *Murder in the First Degree.*

Brief for appellant at Argument VIII.

 The trial judge in this case gave due consideration and aptly discussed appellant's claims of ineffectiveness. We adopt his reasoning with respect to these issues and quote the pertinent portion of the opinion:

The defendant lists five instances of ineffective assistance by trial counsel. First, the defendant alleges that the educational level of David Carter was not presented through testimony or stipulation during the suppression hearing. On the contrary, defense counsel cross-examined Detective Anthony Condemi about the defendant's education. During cross-examination, Detective Condemi stated that he was aware that the defendant had gone to school only through sixth grade (N.T. 3/4/86, p. 27; 5/28/87, p. 8). Also, trial counsel testified that he chose not to introduce evidence of the defendant's IQ tests because he felt that testimony regarding the defendant's sixth-grade education more accurately portrayed the defendant's ability to understand than the IQ scores of 79 and 83 which counsel did not find particularly low (N.T. 5/28/87, PP. 8–9). Accordingly, the testimony demonstrates that this allegation is incorrect.

Secondly, the defendant alleges that no medical evidence was presented at the suppression hearing concerning the defendant's medical and alcohol condition at the time of arrest. At the post-trial hearing, defense counsel stated that the defendant told him that he was not intoxicated at the time of arrest. Also, according to the medical records, the medication which the defendant was taking was mild and not of a type to affect the defendant's mental capacity (N.T. 5/28/87, pp. 13–15, 17). As such, there was no supportive evidence which trial counsel could have produced concerning the defendant's condition at the time of arrest.

Thirdly, the defendant alleges that he was not interviewed sufficiently prior to trial by trial counsel. At the post-trial hearing, trial counsel stated that he and an office investigator interviewed the defendant on separate occasions prior to the Coroner's Inquest for approximately one hour (N.T. 5/28/87, p. 18–19). Also, counsel stated that between the Inquest and the trial, he saw the defendant at the Allegheny County Jail an additional five or six times, including the Saturday and Sunday immediately prior to the start of trial on Monday, March 4, 1986 (N.T. 5/28/87, pp. 20–24; 3/4/86, p. 54). Counsel stated that each of these interviews was from one-half to one hour in length (N.T. 5/28/87, p. 23). As such, we find that counsel's pre-trial contact with the defendant was sufficient and it enabled counsel to more than adequately prepare for trial.

Fourthly, the defendant alleges that trial counsel should have requested that we recuse ourself due to our suppression of the defendant's taped inculpatory statement. At the post-trial hearing, trial counsel stated that the defendant was adamant that he wanted to be tried by this member of the bench rather than by another judge. Further, trial counsel felt that the short suppressed statement in which the defendant did not actually inculpate himself was not damaging in that the court had refused to suppress the defendant's lengthy oral confession (N.T. 5/28/87, p. 28–29). As we cannot refute counsel's statement concerning the defendant's desire to be tried before this member of the Court and we agree with counsel's strategy concerning the suppressed taped statement, we cannot find that counsel was ineffective in this manner.

Fifthly, the defendant alleges that counsel was ineffective in permitting the defendant to testify. At the post-trial hearing, trial counsel stated that the defendant wanted to testify and give his side of the story. Additionally, counsel felt that the defendant's testimony was essential to establish the defendant's level of intoxication in order to show that the defendant did not possess the specific intent to kill (N.T. 5/28/87, pp. 34–35). Accord-

ingly, as counsel needed the defendant's testimony in order to establish his case, we cannot find that counsel was ineffective.

In summary, all of the defendant's allegations question counsel's trial strategy. We are not able to conclude that counsel's actions had no reasonable basis. Nor are we able to conclude that counsel's actions or inactions were in any way prejudicial to the defendant. In fact, we conclude quite the contrary. Trial counsel effectively and zealously represented the defendant during all proceedings before this court, and therefore, we find the claim of ineffective assistance of counsel to be without merit. Trial court opinion 9/28/87, pp. 21–24.

For the above stated reasons, we find all of appellant's contentions to be meritless. Judgment of sentence affirmed.