572 A.2d 694

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Arthur LESTER, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1989.

Filed Feb. 23, 1990.

Reargument Denied May 2, 1990.

Charles J. Cunningham, III, Philadelphia, for appellant.

David S. Thalheimer, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

In this factually unique appeal, Arthur Lester, appellant, alleges that the police promised him sexual rendezvous with his wife and lovers in exchange for his cooperation/confession in a murder investigation. (The record indicates that the police honored their promises.) Lester contends that his trial counsel was ineffective for failing to introduce evidence at the suppression hearing to demonstrate that his confession was involuntary since it was induced by the promises of sexual services made by the police. Lester further asserts that counsel's stewardship was deficient in that counsel did not advise Lester to testify on his own behalf at the suppression hearing.

After a thorough review of the record in this case, and based on our evaluation of Lester's contention and the pertinent law, we conclude that promises of sexual services to a prisoner constitute an inducement sufficient to compel an involuntary confession. Moreover, we find that trial counsel should have elicited Lester's testimony at the suppression hearing with regard to whether his confession was

voluntary. Accordingly, we reverse, vacate judgment of sentence and remand for a new trial.[1]

The facts of this case are set forth below. On September 22, 1978, Ronald Pope was shot to death while getting out of his car. The next day, Lester told his friend John Mears that he, along with Mark Garrick and William "Bookie" Timmons, had killed Pope. In 1983, following Mears' arrest for armed robbery, Mears informed the police that Lester was involved in Pope's homicide. Thereafter, on November 15, 1983, Lester was arrested and transported from a federal penitentiary in New York, where he was incarcerated, to Philadelphia to stand trial.

After receiving *Miranda* warnings, Lester admitted to the police that he had carried a gun and was at the crime scene when Pope was shot. He stated, however, that he did not participate in the shooting. Lester later filed a motion to suppress this statement. The motion was denied. Following a jury trial, Lester was found guilty of voluntary manslaughter. Nunc pro tunc post-verdict motions and amended post-verdict motions were heard and denied. Lester was sentenced to not less than sixteen nor more than 120 months incarceration, with credit for time served. His petition for reconsideration of sentence was denied. This appeal followed.

It is well settled that the law presumes counsel's effectiveness. *Commonwealth v. Ellis,* 354 Pa.Super. 11, 510 A.2d 1253 (1986). However, a defendant may sustain an allegation of ineffective assistance if he can demonstrate that his claim is of arguable merit, that counsel had no reasonable basis for his/her action or inaction, and that

1. Lester actually raises three issues for our review: (1) whether his trial counsel was ineffective for misadvising him as to whether to take the stand at his suppression hearing and for failing to call certain corroborating witnesses; (2) whether his trial counsel was ineffective for failing to interview eyewitnesses to the homicide; and (3) whether his trial counsel was ineffective due to a conflict of interest, in that he represented Lester's unindicted, co-conspirator in a prior proceeding. Since we find that Lester's first claim is meritorious and reverse based on our analysis of that issue, we do not reach the merits of his last two contentions.

prejudice resulted from the ineffectiveness. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

In *Commonwealth v. Carter*, 377 Pa.Super. 93, 546 A.2d 1173 (1988), we set forth the test for determining whether a statement was voluntarily given:

> In determining whether a confession, obtained as a result of a custodial interrogation, is admissible, the accused's *Miranda* rights must have been explained to him and he must have knowingly, voluntarily and intelligently waived these rights. Further, the Commonwealth must show by a preponderance of the evidence that the confession was voluntary. The test for determining whether the confession was voluntary and the waiver of the *Miranda* rights was valid is a totality of the circumstances. Factors which must be looked to in reaching this determination include the following: the duration and methods of interrogation, the conditions of detention, the manifest attitude of the police toward the accused, the accused's physical and psychological state, and any other conditions which 'may serve to drain one's powers of resistance to suggestion and undermine his self-determination.'

*Id.*, 377 Pa. Superior Ct. at 101–02, 546 A.2d at 1177 (citations omitted). *See also Commonwealth v. Schneider*, 386 Pa.Super. 202, 206–207, 562 A.2d 868, 870 (1989) (accord).

■ In the instant case, the record indicates that Lester was in custody for approximately twelve hours on the day that he gave the inculpatory statement to the police regarding his involvement in the Pope homicide. This includes the time that it took to drive from the federal penitentiary in New York to Philadelphia.[2] There is also uncontested evidence that Lester was visited by three women who, at separate times, engaged in sexual relations with him at the

---

**2.** Although the detective who transported Lester from New York to Philadelphia testified that he did not ask him any questions during the ride and that he did not coerce or threaten him in any way during the course of Lester's statement (N.T., October 24, 1988, at 38–39), Lester alleges that he was subjected to a "tag team method of interrogation, [ ...] and other more subtle influences" prior to his confession. (Appellant's brief, at 8).

Police Administration Building in the months following his confession. The Commonwealth argues that there is no connection between the inculpatory statement and the women's visits with Lester because the sexual incidents occurred "well after defendant made his incriminating statement, in some cases, as much as three months later." (Commonwealth's letter brief, at 9). The Commonwealth posits, therefore, that the women could not have influenced Lester's statement. We disagree.

All three women testified at the hearing on post-verdict motions that they were admitted to the Police Administration Building to see Lester. They were each instructed to sign the "log-in" book, which was introduced at the hearing to corroborate their testimony. (N.T., October 25, 1988, at 20–21). Each woman was permitted to visit freely with Lester in a closed, private room for significant periods of time. All three women testified that they engaged in sexual intercourse with Lester during their visits. Additionally, Lester testified that he was taken to the Police Administration Building on five or six occasions. Those dates matched the dates of the women's visits. (N.T., March 11, 1988, at 6–8).

We find that the fact that the women were provided to Lester *after* his confession strengthens his case, not damages it. Promises of sexual accommodations would necessarily precede an inculpatory statement. Were it not for this inducement of future gratification, Lester might not have admitted his involvement in the Pope homicide. Conversely, if the women were provided to Lester before he confessed, he would not have had any impetus to "make a deal" afterwards. Consequently, we find that the police's offer of sex constituted a provocation powerful enough to coerce Lester to cooperate.

We base our decision, in part, on the recent holding by the Pennsylvania Supreme Court in *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409 (1989). Therein, the court addressed the issue of whether a police officer's statement to a defendant, following *Miranda* warnings, constituted an

inducement sufficient to compel an involuntary confession. The court held that the officer's mere comment, "the only thing is I would tell the District Attorney you cooperated for whatever good that would be" tainted the defendant's subsequent admissions. It stated:

> By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot, there occurred an inescapable inducement which cannot be condoned under our law. For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special considerations, however benign in intent, comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect.

*Id.,* 520 Pa. at 155, 553 A.2d at 410–11. *See also Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (1986). We note that the *Gibbs* court restricted its decision to situations where improper offers by the police in exchange for cooperation by the defendant followed the administration of *Miranda* warnings. As such, the instant case falls squarely within the perimeters of *Gibbs.*

At the hearing on post-verdict motions, Detective Lawrence Gerrard testified that Lester was advised of his rights at the Police Administration Building following the seven-hour ride, in police custody, from New York to Philadelphia. (N.T., October 24, 1988, at 10, 15, 38–39). He stated that Lester waived his right to remain silent and gave an incrimi-

nating statement to the police. *Id.* at 39.[3] Gerrard also testified that Lester was not coerced, threatened or induced in any way during the course of his statement. *Id.* at 38–39. He did not deny that Lester was allowed subsequent visits by three women at the Police Administration Building. Instead, he stated that it was common police practice to permit "family members" to visit with the prisoners. However, he testified that "[w]ith a prisoner, he's constantly watched. I mean, he's handcuffed to a chair, in a room with a two-way glass with a door open ..." *Id.* at 44. Detective Gerrard also responded in the negative to defense counsel's question: "[W]hen someone goes to the Police Administration Building to meet with a family member, do you allow them to go in the interview room and close the door when they meet with a family member who is a prisoner?" *Id.* at 49. This testimony directly conflicts with that of all three women.

The women testified that they went to the Police Administration Building, met with Detectives Gerrard and/or Gilbert, signed the log book, and were escorted to Lester's room. The room was described as "a plain room, a chair, a table. It had a double glass window. That was it." (N.T., May 12, 1988, testimony of Patricia Ann Hourde, at 7). Each woman testified that she had sexual intercourse with Lester. Lester was not handcuffed while he was in the room. *Id.* at 13. All three women knew Lester previously and visited him willingly. (*See also* N.T., April 22, 1988, testimony of Mary Louise Whack and Diane Adams, at 3–19). *Importantly, the Commonwealth does not contest that Lester was provided with sex while he was incarcerated.*

As one would expect, the law is sparse in this area. We are unable to find cases that indicate that promises of sex will render a confession involuntary per se. However, in light of the relevant case law, coupled with the evidence

---

**3.** Conversely, Lester repeatedly testified that he asked to speak with his attorney before he confessed. (*See* N.T., October 24, 1988, at 77–78, 82–83).

adduced at the post-verdict motion hearing, we are persuaded that a causal relationship existed between Lester's statement to the police and the women's subsequent visits to the Police Administration Building. *See Commonwealth v. Peters*, 473 Pa. 72, 86, 373 A.2d 1055, 1062 (1977) (promises of immunity will render confessions involuntary per se); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973) (promises of leniency combined with the totality of the circumstances may render a confession involuntary); *Commonwealth v. Elslager*, 349 Pa.Super. 217, 502 A.2d 1354 (1986) (statements given by defendants as a result of certain police promises should have been suppressed). It is difficult to fathom that Lester would have been given access to the three women so freely or would have confessed so readily if not the result of a bargain. We echo the language of the *Gibbs* court. Here, "the improper suggestion of a benefit in return for cooperation poisoned the interrogation system." *Gibbs*, 520 Pa. at 156, 553 A.2d at 411.

■ Since Lester's assertion has merit, we must look to the second prong of the *Pierce* test. The Commonwealth argues that the decision whether to testify was Lester's alone. *Commonwealth v. Wallace*, 347 Pa.Super. 248, 254, 500 A.2d 816, 819 (1985). It further contends that Lester's trial counsel pursued a reasonable strategy in encouraging Lester not to testify at his suppression hearing. The prosecutor was eager to convict Lester, according to counsel, because Lester reneged on his deal with the prosecutor to testify against Mark Garrick in another proceeding. (N.T., February 3, 1988, at 33).

Trial counsel confirmed at the post-verdict motion hearing that he informed Lester of his option to testify and left the ultimate decision to him. (*Id.* at 9, 33–34). However, in light of Lester's disclosures at the post-verdict evidentiary hearing, it is clear that counsel should have encouraged Lester to testify at the suppression-motion level. (*See* N.T., October 24, 1988, testimony of Arthur Lester, 70–152). Adducing such evidence at *a suppression hearing* is different than at *a trial* where a defendant may be prejudiced by

his assertions. *See Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968); *Commonwealth v. Wheeler,* 518 Pa. 103, 113, 541 A.2d 730, 735 (1988); *Commonwealth v. Melson,* 383 Pa.Super. 139, 145, 149, 556 A.2d 836, 838–39, 840–41 (1989); Pa.R.Crim.P. 323(h).

At the post-verdict motion hearing, Lester detailed the circumstances surrounding his confession to the police and repeatedly stated that he was promised sexual visits in return for his statement. (*See* N.T., October 24, 1988, at 84–85, 91, 100–01).[4] If Lester had testified to this effect at his motion to suppress hearing, he may have succeeded in suppressing his coerced statement. His case would have proceeded to trial without the confession. Under the circumstances of the instant case, there existed a reasonable probability that, but for trial counsel's tactics, the outcome of Lester's trial would have been different. *See Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Petras,* 368 Pa.Super. 372, 376, 534 A.2d 483, 484–85 (1987). *Cf. Commonwealth v. Rivers,* 383 Pa.Super. 409, 413, 557 A.2d 5, 7 (1989) (sets forth test to determine whether counsel is ineffective for not putting a defendant on the stand at trial); *Commonwealth v. Fowler,* 362 Pa.Super. 81, 87, 523 A.2d 784, 787–88 (1987); *see also Commonwealth v. Wallace,* 347 Pa.Super. 248, 254, 500 A.2d 816, 819 (1985).

Even the judge expressed his concern during a sidebar colloquy at the hearing on post-verdict motions:

THE COURT: Was there a suppression hearing in this matter?

MR. POWELL: Yes, Judge.

THE COURT: Did the Suppression Hearing cover what allegedly took place in the ride back from Lake Placid, New York, and the statement that allegedly was given at 7:45?

---

**4.** Although he also contends that he was coerced by police promises of drugs and concurrent prison time, Lester did not present corroborating testimony regarding these promises at the post-verdict motion hearing.

MR. POWELL: Barely.

THE COURT: What do you mean by "barely?" If it is a Suppression Hearing you have to have something in there about the statement not being voluntary or a result of some inducement or something, some threats or something.

MR. POWELL: Well, what I was showing you this morning, Your Honor, final pages of the Suppression Hearing indicates that Mr. Gaskins intended to put the defendant on the stand to testify precisely to what he's testifying to now and didn't, and that the defendant is testifying to what he would have testified to had he been put on the stand at the motion to suppress and the reason why he wasn't placed on the stand at the motion to suppress both of which go to the ineffectiveness issue plus as I read the law the voluntariness issue is always at stands even at post-verdict motions and the Court can decide on that now and that's why we're going through it again. Now, the testimony elicited at the motion to suppress was so minimal as I remember it, and I did read it yesterday, it was basically did you speak with him on the way back, did you make him any promises or threats.

THE COURT: You are correct that it can be raised again, but that does not necessarily mean I will rehear testimony that has been given previously and that is why I asked you the question. If you are going to give me testimony that was already given to a suppression court judge then you are wasting your time and mine too.

MR. POWELL: No, Judge, I'm not.

THE COURT: Unless you are going to give me something that was not given to the suppression court judge.

THE COURT: All right.

MR. COLIHAN: That's correct, Judge, the subject matter in detail was not covered. The area, it was covered by the testimony of both the detectives.

(N.T., October 24, 1988, at 79–81).

The record reflects that trial counsel's normal practice was to discuss his clients' options and their consequences

with them, and based on that information, allow them to decide whether to take the stand. (N.T., February 3, 1988, at 9, 34). While this procedure is proper in most circumstances, under the facts of the instant appeal Lester's case would not have been harmed, and could only have been strengthened, if he had been advised to take the stand at the suppression hearing. *See Commonwealth v. Stenhach,* 356 Pa.Super. 5, 13, 514 A.2d 114, 118 (1986) ("effective assistance of counsel includes the requirement that counsel investigate the client's claims and use the results of investigation in defense of the accused."). Lester's trial counsel acknowledged that Lester had informed him prior to the suppression hearing that the police made various promises to him in return for his statement. (N.T., February 3, 1988, at 6, 17). Nevertheless, counsel advised Lester not to testify on his own behalf, either at the motion to suppress hearing or at trial. (*Id.* at 22, 33; *see also* N.T., October 24, 1988, at 112–13).

Moreover, to corroborate his assertion that he was induced by promises of sex, Lester wanted to call at least one of the three women to testify that she had engaged in sexual relations with him. Counsel determined that "their testimony on the central issue would not be helpful." (N.T., February 3, 1988, at 10; 41). Consequently, no testimony was offered at the suppression hearing, aside from that of the detectives, regarding the promises to Lester of visitations including sexual encounters.[5]

The Pennsylvania Supreme Court has stated:

[t]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, [ ...] and we adhere to the view that a conviction founded in whole or part on an involuntary confession denies a defendant due process of law and constitutes reversible error, regardless of whether there

---

**5.** At the suppression hearing itself, during a sidebar colloquy, trial counsel indicated that he was aware of the promises. Yet, he did not have Lester testify as to their validity, even though they comprised the basis of the suppression motion. (N.T., February 15, 1985, at 47–48).

is ample evidence aside from the confession to sustain the conviction.

*Commonwealth v. Perry,* 475 Pa. 1, 7, 379 A.2d 545, 548 (1977) (citations omitted). We find that the claim underlying Lester's ineffective assistance of counsel issue has merit. Moreover, we conclude that trial counsel had no reasonable basis for recommending that Lester not take the stand on his own behalf at the motion to suppress hearing. Finally, we find that Lester was prejudiced as a result of counsel's performance. Accordingly, we reverse, vacate judgment of sentence and remand for a new trial.

Reversed and remanded. Judgment of sentence vacated. Jurisdiction relinquished.