553 A.2d 409

COMMONWEALTH of Pennsylvania, Appellee,

v.

Barry GIBBS, Appellant.

Supreme Court of Pennsylvania.

Reargued Sept. 27, 1988.

Decided Feb. 2, 1989.

Reargument Denied April 13, 1989.

152

Ronald M. Bugaj, Honesdale, Barry Gibbs, I.P.P., for appellant.

Michael E. Weinstein, Matamoras, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case involves the imposition of a death sentence. The Appellant alleges seventeen errors below. We conclude on one issue that his right to request an attorney pursuant to the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny was impaired by the authorities and his subsequent statements were admitted improperly into evidence. For this reason, we order a new trial following automatic review by this Court pursuant to 42 Pa.C.S. § 9711(h), (i).

Appellant was convicted in the shooting death of a security guard. Evidence at the guilt stage of the trial demonstrated that a co-defendant had hired Appellant to kill her

husband. The shooting, however, actually resulted in the death of a co-worker guard for which Appellant and several others were arrested two days later. The following testimony relevant to this opinion was given by the State Police Trooper describing his administering of the *Miranda* warnings:

Q. O.K. Can you continue? Just tell us what happened when you first started the interview.

A. O.K. I read the Miranda warnings to him. He indicated that he understood. At that particular point he then asked or he made the statement, "Maybe I should talk to a lawyer. What good would it do me to tell you?" I responded by telling him, "I really don't know what good it would do. The only thing is I would tell the District Attorney you cooperated for whatever good that would be, but I would have no idea whether it would help your case or not."

THE COURT: I might note that the last statement of the witness was done without reading from the paper.

A. I don't really understand.

BY MR. GUCCINI:

Q. O.K. Continue.

A. O.K. Then Corporal Hague also told him that this was strictly up to him, and that he was there, he knew what happened, and he was the only one that was not family, and he had to make the decision himself on what he should do. All right. And referring to the paper, he signed the waiver at 12:05. (Reproduced Record at pp. 333–334.)

Our decision narrowly focuses on the issue of whether the Trooper's response that "the only thing is I would tell the District Attorney you cooperated for whatever good that would be" constituted an impermissible misleading inducement to the Appellant not to pursue further his ambiguous and equivocal inquiry regarding the presence of an attorney. Our recent opinion in *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986), (per Larsen, J., with two Justices concurring, one Justice concurring spe-

cially, and one Justice concurring in part), provides the basis of our disposition of this case.

In *Hubble,* the Appellee and his wife voluntarily went to the State Police Barracks where *Miranda* rights were given by the police. At that time, the wife suggested to her husband that he get a lawyer, following which the Appellee stated to the police, "I want a lawyer," and "I want a public defender." The police thereupon encouraged and aided Hubble unsuccessfully to telephone an attorney. At his request, they also succeeded in contacting his probation officer who, likewise, advised Appellee to find a lawyer. The facts showed that the police advised him that a public defender might not come to the police barracks, while they still continued to urge him to call the public defender. Appellee and his wife then put on their coats, proceeded towards an exit, but after conferring at length and being told that the police now had information placing him at the scene of the crime, Hubble returned to give an inculpatory statement.

In an appeal of the use at trial of the admission, we held in *Hubble,* first, that Appellee's utterances regarding an attorney were too imprecise to trigger the prophylactic rule barring further police interrogation as required by *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh'g. denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981): "To hold that every utterance of the word 'lawyer' automatically" invokes *Edwards* "would be far too rigid and would not serve the interests of justice." We also concluded, secondly, that Appellee was not misled by the erroneous police statement regarding the public defender. We then included Appellee's utterances within the totality of circumstances test of *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), which holds that where a suspect rather than the police initiates further conversation, the evidence is not suppressed automatically under *Edwards.* We buttressed this last conclusion by noting as well that even if the initial admission had been infirm, Hubble voluntarily gave statements later which in any case cured any original defect. We stressed

the fact the police "scrupulously honored" Hubble's equivocal statement regarding the need for a lawyer by helping him look up an attorney's telephone number and providing him with a telephone. Finally, in *Hubble* we made a crucial finding that the suspect was not misled by the erroneous police statement that the public defender would not travel to the barracks, and we reiterated that conclusion in our opinion. *Hubble* 509 Pa. at 511, 504 A.2d at 173 and 175. We emphasize the absence of any misleading act because it is readily apparent that an opposite finding in *Hubble* would have resulted in a different outcome.

In the present case under review, we hold that the statement by the authorities to Griggs was an impermissible inducement and thereby tainted his admissions. By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot, there occurred an inescapable inducement which cannot be condoned under our law. For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special considerations, however benign in intent, comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect.

Our analysis rests squarely on *Hubble*. There we affirmed the admissibility of a confession only after we were able to determine that the authorities had "scrupulously honored" the suspect's rights and that he had not been misled by investigative inquiries. Moreover, *Hubble's* approval of a confession following Appellee's initiation of a

conversation with the police itself was predicated on an absence of efforts by interrogators to mislead and induce the suspect and took place after the suspect was read his rights. By contrast, here the improper suggestion of a benefit in return for cooperation poisoned the interrogation system. We are not prepared to say that the Appellant's initiation of conversation in this case is constitutionally permissible unless there is a prior finding that the initiation was not induced in the first instance but occurred after *Miranda* warnings were given. Since the circumstances of this case preclude such a finding, we now decide that the inculpatory testimony given at the barracks was infirm.

Because we hold that the police engaged in an inducement, there is no need to address the issue of whether the utterance regarding an attorney was sufficiently precise to pass muster under *Hubble*. On the one hand, if it is assumed that a valid request was made, *Edwards* would have halted all further interrogation. Subsequent conversation by the suspect then likewise would be tainted because it would be the product of continuing improper persuasion. On the other hand, if the utterance did not qualify as an unequivocal call for an attorney, at that point the police also were not justified in promoting an admission by suggesting a benefit if the suspect would not ask for representation. In our decision today, we decide only that the authorities are not permitted to employ inducements which impair in any way a suspect's right to his own unfettered evaluation of the need for legal counsel. *Miranda* and its progeny, especially *Hubble*, otherwise would make no sense.

Appellant's request for a new trial is granted.

The remaining allegations in this appeal are not addressed by this decision.

LARSEN, J., files a dissenting opinion in which FLAHERTY and McDERMOTT, JJ., join.

LARSEN, Justice, dissenting.

I dissent. Contrary to the majority's conclusion, appellant's statements were not inadmissible under *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986). Also,

contrary to the majority's conclusion, I do not agree that there was an "impermissible inducement" by police officers in this case that "tainted" appellant's statements.

As we stated in *Hubble, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh'g. denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), does not require a police officer to stand mute when an equivocal mention of the word "lawyer" is uttered by an accused who has been given his *Miranda* warnings. In the instant case, appellant merely stated "Maybe I should talk to a lawyer. What good would it do me to tell you?" The police officer responded, in good faith, that he did not know what good it would do him but that he (the officer) would tell the District Attorney of appellant's cooperation. I do not interpret appellant's question "what good would it do me to tell you" as a request for a legal opinion from the officer on the legal advantages to be gained by securing legal counsel, nor do I interpret "Maybe I should talk to a lawyer" as an unequivocal request to cease interrogation and retain a lawyer; neither did the suppression court make such interpretations. I would affirm the suppression court and I would uphold the admissibility of appellant's statements.

FLAHERTY and McDERMOTT, JJ., join in this dissenting opinion.