795 A.2d 959.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Russell TEMPLIN, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 2000.

Decided April 24, 2002.

308

Alan J. Josel, Norristown, Michael A. John, for Russell Templin.

Michael D. Marino, Norristown, Marianne Killinger, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## OPINION OF THE COURT

Justice CASTILLE.

This Court granted discretionary pretrial review of a suppression ruling to determine and elucidate the proper standard for evaluating a claim that a confession made after an

explicit *Miranda*[1] waiver was rendered involuntary because it followed upon a promise by police to recommend ROR bail[2] in the event the suspect was arrested and arraigned. The suppression court excluded the confession in this case, focusing exclusively upon the fact of the post-waiver promise, which it deemed an "improper inducement" that "require[d] suppression of the statement." In so holding, the court relied upon *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409 (1989), a case involving an inducement to waive *Miranda* rights—specifically, the right to counsel, which the suspect in *Gibbs* had equivocally invoked. Upon the Commonwealth's certified appeal,[3] a divided Superior Court panel reversed, holding that the suppression court erred in focusing only upon the alleged inducement, while failing to consider the totality of the circumstances, in assessing the voluntariness of appellant's confession. Relying upon the totality of the circumstances analysis set forth in *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879 (1998), the Superior Court panel majority found that appellant's confession was voluntary. Judge Brosky dissented, noting his agreement with the trial court that the case was "extremely similar to, and controlled by," *Gibbs*.

For the reasons set forth below, we hold that the totality of the circumstances, including any alleged inducement, must be considered in evaluating the voluntariness of a confession. In addition, we affirm the finding of the Superior Court that the totality of the circumstances here demonstrated that appellant's confession was voluntary.

In reviewing a suppression ruling, this Court is bound by the lower court's factual findings that find support in

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Rules of Criminal Procedure define "release on recognizance" or "ROR" bail as "[r]elease conditioned only upon the defendant's written agreement to appear when required and to comply with the conditions of the bail bond in Rule 526(A)." Pa.R.Crim.P. 524(C)(1).

3. The Commonwealth certified that the suppression of appellant's confession substantially handicapped or effectively terminated the prosecution, thus perfecting its right to appeal the pretrial order. Pa.R.A.P. 311(d); *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

the record but we are not bound by the court's conclusions of law. *Nester,* 551 Pa. at 160, 709 A.2d at 880–81; *see also Commonwealth v. Polo,* 563 Pa. 218, 222, 759 A.2d 372, 374 (Pa.2000); *Commonwealth v. Pickron,* 535 Pa. 241, 246, 634 A.2d 1093, 1096 (1993). The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review. *Nester,* 551 Pa. at 160–61, 709 A.2d at 881.

The relevant material facts are as follows. On July 24, 1997, a resident of West Pottsgrove Township telephoned the local police department to report that appellant had had sexual contact with the resident's six-year-old daughter while appellant and the child were watching a movie in appellant's home. Officer Todd Richard took the report and began his investigation by interviewing the child and her mother at the police station. On September 17, 1997, Officer Richard again interviewed the child, who related to the officer appellant's alleged actions. Shortly after speaking with the child, Officer Richard went to appellant's home to attempt to schedule a previously requested polygraph examination. Appellant was already familiar with the allegations made against him, as he had been previously interviewed by a representative from Children and Youth Services, accompanied by a police officer other than Officer Richard during that interview. Appellant had not yet responded to the request to take the polygraph test. Appellant agreed with Officer Richard that he would take a polygraph test, and Officer Richard left.

The next day, Officer Richard returned to appellant's home to discuss possible dates for the polygraph. After speaking briefly to appellant, Officer Richard requested that appellant accompany him to the police station to discuss the incident, and appellant agreed. Appellant was not handcuffed or otherwise restrained during the ride to the police station or during the ensuing stationhouse interview. Nor was appellant under the influence of drugs or alcohol. The interview took place in an interview room in which the doors stood open and unguarded. Officer Richard explained to appellant that the doors would remain open and that he was free to leave at any time.

Officer Richard offered appellant something to drink, but appellant declined. Appellant acknowledged in his suppression testimony that Officer Richard was polite and that he felt that he could leave the room during the interview.

Although appellant was not formally restrained,[4] Officer Richard nevertheless advised him of his *Miranda* rights by reading a standard Constitutional Rights Form. The officer questioned appellant to make certain he understood his rights. Appellant then indicated that he was willing to give a voluntary statement, and Officer Richard provided him with a written waiver of rights form and asked him to read it and sign it. Appellant read and signed the form, thus explicitly waiving his *Miranda* rights.[5]

Following the waiver, appellant initially denied having any sexual contact with the child. Approximately half an hour into the discussion, however, appellant asked the officer what would happen if he, in appellant's words, "would . . . . admit to doing something." Officer Richard responded by describing the process of arraignment, setting of bail and preliminary hearing in detail. Officer Richard noted that appellant "asked the question several times . . . . [and] I explained it several times in detail." The suppression court found that Officer Richard also told appellant that he could not make any promises as to whether he would spend time in prison, but advised that, if appellant were to admit his actions and charges were filed, the officer would recommend at arraign-

**4.** *See Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (ultimate inquiry for determining custody for *Miranda* purposes is whether there was formal arrest or restraint on freedom of movement of degree associated with formal arrest), citing *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (citation omitted); *Commonwealth v. Johnson*, 556 Pa. 216, 238–39, 727 A.2d 1089, 1100 (1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000).

**5.** The signed waiver acknowledged that appellant had been advised of: (1) his right to remain silent and that anything he said could and would be used against him in a court of law; (2) his right to counsel before and during any questioning; (3) his right to appointed counsel if he could not afford to retain a lawyer; and (4) his right to refuse to answer any question and to stop talking anytime he wished.

ment that appellant be released on his own recognizance (ROR).

The evidence concerning the promise to recommend ROR release was disputed. Officer Richard testified that, although he discussed making a recommendation of ROR release, he did not promise to make such a recommendation in exchange for a statement. The officer testified that he told appellant he would make that recommendation because he believed appellant could be trusted to appear since appellant had been nothing but cooperative. The officer was impeached with his contemporaneous report dated September 18, 1997, which stated:

> I explained to [appellant] that I could make no promises as to whether or not he would spend time in prison. I did advised [sic] him that if he he [sic] were to admit his actions and charges were filed then I would recommend R.O.R. bail at his arraignment.

Exhibit D–1. Appellant testified that the officer promised him that he would recommend both ROR release and Accelerated Rehabilitative Disposition (ARD) classes in exchange for a statement. Appellant further claimed that, "I thought I would go in front of a judge and he would give me ROR and ARD classes and I thought it would be over and done with." N.T. 9/8/98 at 49. The suppression court stated that it "resolved the conflict in the evidence and found that Officer Richard promised to make a recommendation for ROR bail, but not ARD. . . . ." Trial court op. at 2–3. That credibility-based finding is consistent with Officer Richard's report and, thus, is supported by the record evidence.

The suppression evidence also reflects that Officer Richard told appellant that, notwithstanding his recommendation of ROR release, it would be the district justice who would establish the terms of any post-arraignment release. Appellant testified that he realized that the district justice ultimately would determine whether he would be released after arraignment and that, in fact, ROR release was recommended at his arraignment and he was released on his own recognizance. Appellant also testified that Officer Richard never promised

him that he would talk to the district attorney about his case. Finally, appellant testified that he understood everything the officer told him up to the point "where the D.J. would come in and, you know, ROR and ARD classes."

Appellant then gave a written statement admitting, *inter alia,* that he rubbed the six year-old child's vagina with his hand, but denying that he ever exposed himself to the child or otherwise touched her. Appellant also claimed that he was "on acid" when he touched the child. Officer Richard transcribed the statement onto his computer as appellant spoke. Appellant reviewed a printout of the statement, made corrections, then signed and adopted it.

On appeal, appellant contends that the officer's post-*Miranda* waiver promise to recommend ROR release at arraignment was "an offer of leniency in the prosecution" of the case which rendered his confession involuntary as a matter of law, irrespective of the totality of the circumstances. Appellant argues that, while the totality of the circumstances test generally governs the determination of the voluntariness of a confession, *Gibbs* and its progeny require a "bright line rule" of exclusion automatically invalidating confessions which follow upon an offer of leniency. In the alternative, appellant argues that his confession was involuntary under the totality of the circumstances. The Commonwealth responds that the constitutional test for exclusion of a confession upon grounds of involuntariness requires consideration of the totality of the circumstances and that, under that analysis, the Superior Court properly determined that appellant's confession was voluntary.

The Superior Court clearly was correct in holding that the voluntariness of a confession is determined by the totality of the circumstances. The contrary, absolute rule that appellant promotes apparently derives from an early opinion of the U.S. Supreme Court, *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), where the U.S. Supreme Court stated that a confession cannot be obtained by "any direct or implied promises, however slight, nor by the

exertion of any improper influence." *Id.* at 542–43, 18 S.Ct. 183 (citation omitted). But the Supreme Court has since made clear that, under current precedent, the above-quoted passage from *Bram* "does not state the standard for determining the voluntariness of a confession." *Arizona v. Fulminante,* 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Instead, voluntariness is determined by considering the totality of the circumstances. *Id.; see also Withrow v. Williams,* 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) ("we continue to employ the totality-of-circumstances approach when addressing a claim that the introduction of an involuntary confession has violated due process"); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226–27, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *Accord Miller v. Fenton,* 796 F.2d 598, 604 (3d Cir.1986), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986). *See generally* W.R. LaFave et al., *Criminal Procedure,* § 6.2(c) (2d ed.1999). This Court explicitly recognized the inapplicability of *Bram's* absolute statement in *Nester. See* 551 Pa. at 164, 709 A.2d at 883 (*Bram* wrongly implies that voluntariness should be resolved with narrow "but-for" test, *i.e.,* whether defendant would have confessed but for threat or promise; but Supreme Court has explicitly declared that totality, rather than *Bram* standard, governs).

Long before *Fulminante,* this Court had repeatedly recognized that the voluntariness of a confession is determined by considering the totality of the circumstances. *E.g., Commonwealth v. Kampo,* 480 Pa. 516, 522, 391 A.2d 1005, 1007–08 (1978); *Commonwealth v. Jones,* 457 Pa. 423, 430, 322 A.2d 119, 124 (1974) ("there is no simple litmus test for determining whether a confession is involuntary. Instead, courts must consider the totality of the circumstances surrounding the confession"); *Commonwealth v. Eiland,* 450 Pa. 566, 572–75, 301 A.2d 651, 653–54 (1973) (discussing, *inter alia, Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149, 239 A.2d 426, 430 (1968). This Court has applied the totality of circumstances test with no less force or vigor in cases where there was a claim that a promise or inducement

rendered the confession involuntary. *E.g., Eiland.* This Court merely reaffirmed the vitality of the test in *Nester,* 551 Pa. at 162–63, 709 A.2d at 882 (footnote omitted); *accord Nester,* 551 Pa. at 169–70, 709 A.2d at 885–86 (Nigro, J., dissenting). *See also Commonwealth v. Jones,* 546 Pa. 161, 178, 683 A.2d 1181, 1189 (1996) ("The test for determining voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances"); *Commonwealth v. Edmiston,* 535 Pa. 210, 227–28, 634 A.2d 1078, 1087 (1993) (same).

Appellant argues, however, that in *Commonwealth v. Laatsch,* 541 Pa. 169, 661 A.2d 1365 (1995), a case post-dating *Fulminante,* this Court "reaffirmed" the supposed ruling of *Gibbs* that a promise of leniency in the prosecution, without more, automatically negates the voluntariness of a confession. Appellant's reliance on *Laatsch* and *Gibbs* is misplaced. The *Laatsch* Court merely held that the Superior Court in that case had erred in extending *Gibbs* to a situation involving a police promise designed to induce cooperation in future investigations, rather than an inducement to waive counsel and confess, as had occurred in *Gibbs.* There was no broad issue in *Laatsch* as to the propriety of employing *Gibbs* in evaluating the voluntariness of a confession—the issue which is presented here.[6]

Second, and more fundamentally, *Gibbs* neither cited to, nor purported to overrule, this Court's precedent recognizing that the totality of the circumstances test governs the voluntariness of confessions.

The State Police trooper who interrogated Gibbs stated that, after he administered *Miranda* warnings, Gibbs made what this Court termed an "equivocal inquiry" respecting the right to counsel, as he suggested, "Maybe I should talk to a

---

**6.** Appellant also claims that this Court "reaffirmed" the *Gibbs* test in *Nester* because *Nester* cited to *Laatsch.* In fact, *Nester* made clear that the totality of the circumstances test governs; the discussion of *Laatsch* occurred only as the *Nester* Court was in the process of applying the totality of the circumstances. In any event, in both *Laatsch* and *Nester* suppression relief was denied; thus, neither case held that an inducement alone rendered a confession involuntary.

lawyer," and "What good would it do me to tell you?" The trooper responded, "I really don't know what good it would do. The only thing is I would tell the District Attorney you cooperated for whatever good that would be, but I would have no idea whether it would help your case or not." Gibbs then waived his *Miranda* rights and confessed to the trooper. 520 Pa. at 153, 553 A.2d at 409. This Court determined that the trooper's statement in response to the defendant's equivocation respecting counsel impermissibly induced his *Miranda* waiver, thereby rendering his subsequent confession inadmissible:

> By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot, there occurred an inescapable inducement which cannot be condoned under our law. For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special consideration, however benign in intent, comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect.

*Id.* at 155, 553 A.2d at 410–11. The Court concluded that, "we decide only that the authorities are not permitted to employ inducements which impair in any way a suspect's right to his own unfettered evaluation of the need for legal counsel." *Id.* at 156, 553 A.2d at 411.

Obviously, an inducement to waive following upon an assertion of rights after being given *Miranda* warnings implicates more than a due process concern with the voluntariness

of a confession; it may burden the defendant's constitutional privilege against compulsory self-incrimination or the right to counsel. Thus, confessions obtained in violation of *Miranda* are excluded irrespective of their voluntariness. Unlike *Gibbs*, this case involves the voluntariness of a confession in a circumstance where *Miranda* rights were properly explained, acknowledged, explicitly waived, and no assertion of the right to counsel, equivocal or otherwise, or the right to remain silent was made. Whatever inducement is alleged to have existed in this matter did not "choke off the legal process at the very moment which *Miranda* was designed to protect." Since the concerns that animated *Gibbs* are not present in the case *sub judice, Gibbs* is inapposite. *See Commonwealth v. Bronshtein*, 547 Pa. 460, 473–74, 691 A.2d 907, 913 (1997) (recognizing *Miranda*—based nature of *Gibbs* holding); *Commonwealth v. Jones*, 457 Pa. at 431 n. 7, 322 A.2d at 124 n. 7 (recognizing distinction between coerced confession claim and claim that confession is inadmissible under *Miranda* ).

 The circumstances of the confession here, viewed in their totality, plainly demonstrate its voluntary nature. In determining voluntariness, the question "is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Nester*, 551 Pa. at 163, 709 A.2d at 882; *Jones*, 457 Pa. at 430, 322 A.2d at 124 (same); *see also Miller*, 796 F.2d at 604 ("The question in each case is whether the defendant's will was overborne when he confessed"). "By the same token, the law does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself." *Commonwealth v. Graham*, 408 Pa. 155, 162, 182 A.2d 727, 730–31 (1962). Factors to be considered in assessing the totality of the circumstances include "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that

could drain a person's ability to withstand suggestion and coercion." *Nester,* 551 Pa. at 164, 709 A.2d at 882.

Of primary importance in this case is the fact that appellant was fully apprised of, and expressly waived, his *Miranda* rights, including the right to counsel and the right to remain silent, *before* any substantive questioning began, and well before the alleged inducement to confess. As a leading commentator has noted

The fact that warnings were given is an important factor tending in the direction of a voluntariness finding. This fact is important in two respects. It bears on the coerciveness of the circumstances, for it reveals that the police were aware of the suspect's rights and presumably prepared to honor them. And ..... it bears upon the defendant's susceptibility, for it shows that the defendant was aware that he had a right not to talk to the police.

W.R. LaFave et al., *Criminal Procedure,* § 6.2(c), at 460. *Accord Jones,* 546 Pa. at 178–79, 683 A.2d at 1189 (fact that suspect was read *Miranda* rights immediately prior to making statement weighed in favor of finding voluntariness).

The other circumstances surrounding the stationhouse interview corroborate the voluntariness of the confession. Appellant voluntarily accompanied the officer to the police station. *See Nester,* 551 Pa. at 165, 709 A.2d at 883. The interview was conducted by a single police officer and lasted at most an hour and a half, not an excessive period of time. *Id.* There was no physical coercion or intimidation: Appellant was not handcuffed or arrested, either during the ride to the stationhouse or during the interview itself. The door to the interview room was left open and appellant was informed that he was free to leave at any time. Appellant also was not impaired by drugs or alcohol. Nor did the police officer threaten appellant in any way; to the contrary, appellant testified that the officer was polite, and even offered him something to drink. *See Edmiston,* 535 Pa. at 228, 634 A.2d at 1087 (comfortable surroundings and non-coercive atmosphere, absence of force or compulsion, absence of handcuffing or shackling, and polite demeanor of police weigh in favor of

finding of voluntariness). Finally, the subject of the interview was not sprung upon appellant by surprise: Appellant was already aware of the child's accusations, and he had already been in contact with the police on several other occasions, including just the day before, respecting the allegations. In short, there was no special element of coercion, over and beyond that which is inherent in any non-custodial station-house interview, to overbear appellant's will. In addition, any coercive factors inherent in the stationhouse setting were more than offset by the *Miranda* warnings and waiver.

What the matter is reduced to then is the effect of the promise to recommend release on ROR. Although a promise of pre-trial release is not insignificant, appellant is incorrect in equating it with a promise of leniency in the actual prosecution itself, *i.e.*, a reduction or outright dismissal of charges, or a promise as to leniency in sentencing. The promise here did not even concern a recommendation to talk to the Court or the prosecutor with respect to the overall prosecution, *contrast Gibbs*, nor was there a promise that a confession would result in no charges being filed. *See Nester*, 551 Pa. at 165, 709 A.2d at 883. The importance of the distinction in the scope of the promise is made apparent by considering appellant's suppression testimony. Appellant did not merely claim that he was promised a recommendation of ROR release; instead, he claimed that he was also promised that, if he gave an incriminating statement, he would be required only to attend ARD classes, and then the matter "would be over and done with." His testimony regarding ARD classes was not credited by the suppression court. Obviously, a promise of a favorable and relatively painless resolution of the entire case is much more likely to have a coercive effect than a promise only to recommend ROR release at arraignment.

Equally significant is the fact that the promise respecting ROR release was not misstated or overstated. The officer made clear that the ultimate determination of the conditions of any pre-trial release would be up to the assigned district justice, and appellant testified that he understood that fact. The officer was then true to his promise, and appellant in fact

was released on ROR. The absence of any misstatement or misleading promise weighs in favor of a finding of voluntariness. *See* W.R. LaFave et al., *Criminal Procedure*, § 6.2(c), at 452 n. 86 ("Of course, deception or misstatement in the promise is a critical factor in concluding that it [operated to overbear the suspect's will]"); *Commonwealth v. Kampo*, 480 Pa. at 522, 391 A.2d at 1007–08 (fact that officers were truthful with suspect regarding what they would tell court if he cooperated weighed in favor of finding confession voluntary).

Considered in its totality, the credited evidence here overwhelmingly demonstrated that appellant's confession was voluntary. Accordingly, we affirm the decision of the Superior Court.

Former Chief Justice FLAHERTY did not participate in the decision of this case.