[J-33-2018][M.O. - Dougherty, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 54 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellant | : | Court at No. 693 MDA 2016 dated |
| | : | 4/11/17 affirming the order dated of the |
| | : | Court of Common Pleas of Schuylkill |
| | : | County, Criminal Division, at No. CP-54- |
| v. | : | CR-0001710-2015 dated 4/5/16 |
| | : | |
| JOSHUA MICHAEL LUKACH, | : | |
| | : | |
| Appellee | : | SUBMITTED:  May 9, 2018 |

## CONCURRING OPINION

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  October 17, 2018**

I join Sections I and II of the majority opinion, and concur in the result as to Section III.

As I read the record, it is clear, as the majority concludes, that Appellee's invocation of his right to remain silent was unequivocal.  Moreover, the interrogating officer did not thereafter wait for Appellee to initiate further discussion, but instead immediately resumed questioning Appellee.  He continued for a considerable time to pressure Appellee into confessing by employing threats – including a repeated assertion that Appellee would lose valuable rights if he did not confess before certain imminent lab results were obtained by investigators – and implying that this was Appellee's last chance to cooperate with the police and thereby help his own case.  Hence, the common pleas court acted properly in suppressing his confession.

Regarding the second issue, the only scenarios of which I am aware in which the Supreme Court has refused to suppress the fruits of an improperly-obtained confession have involved statements that were clearly voluntary and given in situations where the defendant had not expressly invoked his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).[1]  The facts here do not fall within that description.

I write separately for two reasons.  First, I wish to note my difficulty in reconciling this dispute with others in which more intimidating tactics have been approved by this Court.  In *Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291 (2011), for example, the defendant was shackled and was then approached by four government agents.  Despite express, serial invocations by the defendant of his right to counsel, the interrogating officer advised him that his chosen attorney would not talk with him, he would not have access to another lawyer for several days, and telling his side of the story would be "the right decision" – particularly as another defendant who refused speak was sentenced to death.  *See id.* at 518, 12 A.3d at 344-45 (Saylor, J., dissenting) (recounting these aspects of the record).  Yet, a majority of this Court concluded that such tactics were non-coercive and, as such, did not violate the defendant's right to counsel.  *See id.* at 485, 12 A.3d at 325.

Second, unlike the majority I do not view *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409 (1989), as providing direct guidance.  Most notably, that case did not

---

[1] *See, e.g.*, *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620 (2004) (holding that an officer's failure to administer full *Miranda* warnings did not require suppression of derivative physical evidence where the defendant interrupted the officer's attempt to provide the requisite warnings and the confession was clearly voluntarily); *Michigan v. Tucker*, 417 U.S. 433, 446, 94 S. Ct. 2357, 2364-65 (1974) (allowing testimony of a third-party although the police procured such testimony as the fruit of the defendant's voluntary statement made after an incomplete warning); *Oregon v. Elstad*, 470 U.S. 298, 105 S. Ct. 1285 (1985) (determining that a second, mirandized confession was not the suppressible fruit of an earlier, non-mirandized voluntary confession).

involve the question of whether a confession was involuntary, but instead spoke of inducements, persuasion, trickery, and frustration of the *Miranda*-warning process. *See Gibbs*, 520 Pa. at 155, 553 A.2d 410-11. It explained that when this occurs, the confession is "tainted," *id.* at 155, 553 A.2d at 410, but it did not suggest the confession is necessarily the product of coercion. *See generally United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) ("Trickery does not make it impossible *per se* to find that a defendant voluntarily waived his rights."). Furthermore, although the *Gibbs* Court suppressed the challenged confession, it said nothing about whether derivative physical evidence must also be suppressed.

The above observations relating to *Gibbs* are interrelated because of the central role police coercion plays in determining whether the fruits of an illegally-obtained confession are subject to suppression. If the confession is coerced – *i.e.* compelled[2] – the fruits are undoubtedly suppressible. *See Kastigar v. United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 1661 (1972) (indicating that the Fifth Amendment protects against both use and derivative use of compelled self-incriminating testimony); *United States v. Hubbell*, 530 U.S. 27, 38, 120 S. Ct. 2037, 2044 (2000) (same). It does not follow, however, that a confession given in police custody due to police-initiated questioning following a suspect's assertion of his *Miranda* rights is to be regarded as coerced *per se* for purposes of the fruits doctrine.[3] This is so, notwithstanding that the police are not

---

[2] Although the Fifth Amendment protects against "compelled" self-incrimination, U.S CONST. amend. V, in that context the Supreme Court at times uses the concepts compulsion and coercion interchangeably. *See, e.g.*, *Tucker*, 417 U.S. at 448, 94 S. Ct. at 2366 ("Cases which involve the Self-Incrimination Clause must, by definition, involve an element of coercion, since the Clause provides only that a person shall not be compelled to give evidence against himself.").

[3] Admittedly, some language in *Miranda* does suggest a *per se* rule along these lines. *See Miranda*, 384 U.S. at 473-74, 86 S. Ct. at 1627-28 (observing that, once warnings (continued…)

permitted to re-initiate questioning after a suspect invokes his rights. *See Edwards v. Arizona*, 451 U.S. 477, 487, 101 S. Ct. 1880, 1886 (1981).[4] Therefore, in my view the factors delineated in our cases pertaining to the voluntariness of a confession should govern any assessment of whether Appellee's confession was the product of government coercion so that its fruits are suppressible.

Whether a confession is voluntary is an issue of law which we review *de novo*. *See Commonwealth v. Nester*, 551 Pa. 157, 160-61, 709 A.2d 879, 881 (1998) (citing cases). A confession will be deemed involuntary where an interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. *Id.* at 163, 709 A.2d at 882. The Supreme Court

---

(…continued)
have been given and the suspect invokes his right to remain silent, any further statement "cannot be other than the product of compulsion, subtle or otherwise"); *see also Minnick v. Mississippi*, 498 U.S. 146, 151, 111 S. Ct. 486, 489 (1990) (explaining that the rule against police-initiated resumption of questioning after the suspect has invoked his rights "ensures that any statement made in subsequent interrogation is not the result of coercive pressures"). Less than a decade after *Miranda* was decided, however, the Court indicated that statements made by suspects under such circumstances, while excluded from the prosecution's case-in-chief, may be used as rebuttal evidence "provided that the trustworthiness of the evidence satisfies legal standards." *Oregon v. Hass*, 420 U.S. 714, 722, 95 S. Ct. 1215, 1221 (1975) (internal quotation marks and citation omitted). As coerced statements are inherently unreliable, *accord Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 2330 (2000), *Hass* implicitly acknowledged that some confessions obtained as a result of post-invocation, police-initiated questioning may be voluntary. *See also Commonwealth v. Templin*, 568 Pa. 306, 316-17, 795 A.2d 959, 965 (2002) (noting that confessions improperly obtained in this way "are excluded irrespective of their voluntariness"); *cf. Elstad*, 470 U.S. at 307 & n.1, 105 S. Ct. at 1292 & n.1 (suggesting that, although a *Miranda* violation raises an irrebuttable presumption of coercion, it does not "constitute" coercion for all purposes).

[4] The standard for determining when a suspect has invoked his right to remain silent is the same as that which applies to an invocation of his right to counsel. *See Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S. Ct. 2250, 2260 (2010).

has at times referred to involuntariness in terms of the suspect's will having been "overborne by the sustained pressures upon him." *Davis v. North Carolina*, 384 U.S. 737, 739, 86 S. Ct. 1761, 1763 (1966). In all events, review for voluntariness has traditionally entailed an inquiry into the totality of the circumstances, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047 (1973) ("In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation."), with attention to factors such as those recently outlined in *Commonwealth v. Martin*, 627 Pa. 623, 101 A.3d 706 (2014):

> Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Id.* at 654-55, 101 A.3d at 725 (citing *Commonwealth v. Perez*, 577 Pa. 360, 373, 845 A.2d 779, 787 (2004)).

In my estimation, when applying the above considerations to a situation such as the one presently under review, significant weight should be given to the fact Appellee's *Miranda* rights were violated in what the Supreme Court has described as the inherently coercive setting of custodial police interrogation. *See Miranda*, 384 U.S. at 458, 86 S. Ct. at 1619 (referring to "the compulsion inherent in custodial surroundings"); *Dickerson*,

530 U.S. at 435, 120 S. Ct. at 2331 (noting custodial interrogation "exacts a heavy toll on individual liberty and trades on the weakness of the individual" (internal quotation marks and citation omitted)). What this means in practice is that a lower threshold should be applied for a finding of involuntariness where, as here, the authorities improperly re-initiate questioning after the suspect asserts his rights. In this regard, one noted authority has observed that, when the police give warnings but later suggest that exercising them will "deny[] the defendant all opportunities for leniency" – as occurred here – such a course of conduct "not only will render involuntary the waiver of *Miranda* rights but also add a coercive element to the interrogation that could render the statement itself involuntary." WAYNE R. LAFAVE ET AL., 2 CRIMINAL PROCEDURE, §6.2(c) (4th ed. 2015).

In the present matter, the questioning, subtle threats, and inducements in the post-invocation timeframe were repeated on multiple occasions. As referenced by the majority, the officer "impermissibly induced [Appellee] to speak[.]" Majority Opinion, *slip op.* at 25. In particular, and as noted, he painted a picture whereby Appellee could only help his case for a short window of time by inculpating himself; he suggested if Appellee did not do so quickly, the authorities would soon be in possession of incriminating physical evidence and, at that point, they would adopt a new, hostile attitude toward Appellee. Further, at 18 years old Appellee was relatively young and inexperienced, and it may be inferred from some of his answers that he was sleep deprived.

Overall, then, I agree with the majority's ultimate conclusion that the confession stemming from the officer's initiation and continuation of further discussion was involuntary and, as such, any derivative evidence is subject to suppression. That being the case, I agree with the holding reached by the majority in Part III of its opinion.