J-S08008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD JAMES NEELAN JR. | : | |
| | : | |
| Appellant | : | No. 890 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000948-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MAY 15, 2024**

Appellant, Richard James Neelan, Jr., appeals from the judgment of sentence entered on May 23, 2023.  We affirm.

On February 12, 2021, the West Hempfield Township Police filed a criminal complaint against Appellant, charging Appellant with committing sexual crimes against the victim, T.W. ("the Victim"), on either December 7 or 8, 2019.  Specifically, the complaint alleged, Appellant placed his fingers in the Victim's vagina while she was sleeping.  **See** Criminal Complaint, 2/12/21, at 2.

Appellant filed a pretrial motion, where he sought to suppress incriminating statements he made to the Victim, during a police-recorded, January 28, 2021, telephone call between himself and the Victim.  Regarding

---

[*] Former Justice specially assigned to the Superior Court.

the factual basis for this suppression motion, Appellant noted that, on December 9, 2019, the Victim reported the sexual assault to Detective Thomas Ziegler of the West Hempfield Township Police Department. Appellant's Suppression Motion, 11/3/21, at 1. The next day, Appellant voluntarily appeared at the West Hempfield Township Police Department building and spoke with Detective Ziegler in a non-custodial setting, with Detective Ziegler informing Appellant at the outset that: "[y]ou are not under arrest at this time[];" "you're free to leave whenever you want to;" "[a]nything that you tell me today is of your own free will;" and, "[y]ou can tell me whatever you want to or you don't have to say anything at all." ***See id.***; ***see also*** Trial Court Order, 6/14/22, at 3.

Although Appellant did not seek to suppress anything he said during the December 10, 2019 meeting with Detective Ziegler, Appellant observed that, at the end of the interview, he and Detective Ziegler had the following exchange:

> [Detective Ziegler]: Okay. Yeah. Like I said, I'll get back to you. I'll try to keep you –
>
> [Appellant]: Yeah.
>
> [Detective Ziegler]: -- abreast.
>
> [Appellant]: Because at this point [the Victim] should probably going to be just pressing charges so it's like.
>
> [Detective Ziegler]: It sounds -- well, like I said, ultimately my job is to gather the information –
>
> [Appellant]: Yes.

[Detective Ziegler]: -- from what you and she tell me –

[Appellant]: Yeah.

[Detective Ziegler]: -- and present it to the district attorney who will make a decision if charges need to be brought –

[Appellant]: Or not brought.

[Detective Ziegler]: -- yes, would not be filed or not.

[Appellant]: Yeah.

[Detective Ziegler]: That's what -- that's what we're doing here today.

[Appellant]: Yeah.

[Detective Ziegler]: And if that happens, you know –

[Appellant]: That's fine. I need a lawyer and I'll just figure it out.

[Detective Ziegler]: And that's what I would suggest, I mean.

[Appellant]: Yeah. A lawyer is $600 -- you know, $500 or $600 (indiscernible).

[Detective Ziegler]: Well...

[Appellant]: (Indiscernible.)

[Detective Ziegler]: Don't -- don't worry about it right this minute.

[Appellant]: Yeah.

[Detective Ziegler]: But down the road if it comes –

[Appellant]: Yeah, I'm not worrying about it like right now, honestly. If the charges do present, yeah, you know –

[Detective Ziegler]:  Yeah.

[Appellant]:  -- obviously it's smart.

[Detective Ziegler]:  So, yeah, definitely you want to talk to an attorney –

[Appellant]:  Yeah.

[Detective Ziegler]:  -- but other than that.

[Appellant]:  Because obviously I'm probably going to lose my job, lose my house, lose my daughter.  I'll lose everything, yeah, so.

[Detective Ziegler]:  Yeah.

[Appellant]:  Absolutely everything, yeah.

[Detective Ziegler]:  You'd certainly want to seek representation if charges were brought.

[Appellant]:  Yeah.

[Detective Ziegler]:  Certainly, someone to represent you and back you up there.

[Appellant]:  Yeah.

[Detective Ziegler]:  Let's not put the cart before the horse. Let's just do what we have to do now.

[Appellant]:  Yeah.

[Detective Ziegler]:  And I'll be in touch with you.

[Appellant]:  Sounds good.

[Detective Ziegler]:  You go do what you got to do to make things right in your world.

[Appellant]:  Yeah.

[Detective Ziegler]:  And your daughter's life.

[Appellant]: Yeah.

[Detective Ziegler]: And, you know, whatever you got to do to make things stable there again.

[Appellant]: Yeah.

[Detective Ziegler]: And I'll be in contact with you.

[Appellant]: That's fine.

[Detective Ziegler]: Like I said, I'm not going to be reaching out to [your wife] for anything. I don't see any reason to have to talk to her about this. She wasn't a witness or didn't observe anything, so.

[Appellant]: Yeah.

[Detective Ziegler]: Well, other than that anything for me? Any questions?

[Appellant]: No.

[Detective Ziegler]: Okay.

[Interview ends].

N.T. Interview, 12/10/19, at 28-32.

Within the suppression motion, Appellant claimed that Detective Ziegler "advis[ed Appellant] that he did not yet need counsel" during the December 10, 2019 interview and, in doing so, "denied [Appellant] the unfettered evaluation as to his need for counsel." Appellant's Suppression Motion, 11/3/21, at 4. Appellant further claimed that, had Appellant "not been dissuaded from seeking counsel, counsel [would] have informed [Appellant] of the potential for a recorded wire phone call between the alleged victim and himself." *Id.* Accordingly, Appellant claimed, the incriminating statements

he made to the Victim during the police-recorded, January 28, 2021, telephone call between himself and the Victim must be suppressed, as those statements constitute the "fruit" of this interference with his right to counsel and his right against self-incrimination. *Id.*

Following a hearing, the trial court denied Appellant's suppression motion. *See* N.T. Suppression Hearing, 2/4/22, at 1-12; Trial Court Order, 6/14/22, at 1-4. Appellant then proceeded to a jury trial where, as Appellant notes, "the Commonwealth relied extensively on [statements Appellant made during the] wiretapped[, January 28, 2021, telephone call between Appellant and the Victim]." *See* Appellant's Brief at 8.

The jury found Appellant guilty of two counts of aggravated indecent assault and two counts of indecent assault.[1] On May 23, 2023, the trial court sentenced Appellant to serve an aggregate term of two to four years in prison, followed by two years of probation, for his convictions.

Appellant filed a timely notice of appeal. He raises one claim to this Court:

> Did the trial court err[] when it allowed the Commonwealth to rely on statements made by [Appellant] in a recorded telephone call to the [Victim], after [Appellant] was advised by one of the investigating officers that he should not "worry about" hiring counsel "right this minute"?

Appellant's Brief at 4.

---

[1] 18 Pa.C.S.A. §§ 3125(a)(1) and (4) and 3126(a)(1) and (4), respectively.

- 6 -

Appellant's sole claim challenges the trial court's denial of his suppression motion. Our standard and scope of review of an order denying a motion to suppress is well established:

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotation marks omitted).

Appellant claims on appeal that, during his December 10, 2019 meeting with Detective Ziegler, Detective Ziegler told Appellant that he did not need to hire an attorney "at that time" and that Detective Ziegler then "promised" Appellant that the detective "would inform [Appellant] when he needed to . . . seek the assistance of counsel." Appellant's Brief at 14. According to Appellant: "Detective Zeigler didn't ever get 'in touch,' to tell [Appellant] it was time to hire counsel. Instead, the detective exploited [Appellant's] decision to do exactly what the detective told him to do – not hire counsel

- 7 -

until 'charges are filed.'" *Id.* at 15. Appellant further claims that, since Detective Zeigler "did not deliver what he promise[d] in the inducement," Appellant's waiver of his right to counsel and his right against self-incrimination were "based on a false promise." *Id.* Accordingly, Appellant claims, the statements Appellant made to the Victim during the police-recorded, January 28, 2021, telephone call between himself and the Victim must be suppressed, as those statements constitute the "fruit" of this interference with his right to counsel.[2] *Id.* at 18. In support of this claim, Appellant relies upon the Pennsylvania Supreme Court's opinion in *Commonwealth v. Gibbs*, 553 A.2d 409 (Pa. 1989) and our opinion in *Commonwealth v. Morgan*, 606 A.2d 467 (Pa. Super. 1992), both of which held that the "waiver of a right based upon a false promise [by the police] cannot be fairly accepted as a knowing and voluntary waiver" of that right. *See Morgan*, 606 A.2d at 469.

In *Gibbs*, Defendant Gibbs was arrested for murder and given his *Miranda*[3] warnings. *Gibbs*, 553 A.2d at 410. After receiving his *Miranda* warnings, Defendant Gibbs stated: "Maybe I should talk to a lawyer. What good would it do me to tell you?". *Id.* The officer then responded: "I really don't know what good it would do. The only thing is I would tell the District

---

[2] Appellant's claim on appeal appears to vary slightly from the claim he made to the suppression court. Rather than finding waiver, we conclude that Appellant's claim on appeal fails on the merits.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 8 -

Attorney you cooperated for whatever good that would be, but I would have no idea whether it would help your case or not." *Id.* Defendant Gibbs then waived his *Miranda* rights and spoke with the officer. *Id.*

On appeal to our Supreme Court, Defendant Gibbs claimed that the officer's above-quoted statement "constituted an impermissible misleading inducement to [Defendant Gibbs] not to pursue further his ambiguous and equivocal inquiry regarding the presence of an attorney." *Id.* The Supreme Court agreed with Defendant Gibbs and held "that the statement by [the officer] to [Defendant Gibbs] was an impermissible inducement and thereby tainted his admissions." *Id.* The Supreme Court reasoned:

> By conveying the distinct impression that the district attorney would be told of his cooperation in giving a confession on the spot, there occurred an inescapable inducement which cannot be condoned under our law. For while we recognize that the police have a legitimate responsibility to conduct investigations, including interrogations, criminal suspects have a constitutional right to make up their own minds as to whether they want the *Miranda* protections. Promises of benefits or special considerations, however benign in intent, comprise the sort of persuasion and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect. . . .
>
> [T]he authorities are not permitted to employ inducements which impair in any way a suspect's right to his own unfettered evaluation of the need for legal counsel. *Miranda* and its progeny . . . otherwise would make no sense.

*Id.* at 410-411.

*Morgan* dealt with the waiver of the right against self-incrimination. In that case, the police telephoned Defendant Morgan and "asked him to come to the police station for questioning in regard to a stolen car that was found bearing [his] fingerprints." *Morgan*, 606 A.2d at 468. A detective provided Defendant Morgan with his *Miranda* warnings, Defendant Morgan waived those rights, and admitted that he stole the car. *Id.*

The detective then began questioning Defendant Morgan about "four armed robberies of pizza delivery men which had occurred in [the city,] as well as a recent homicide." *Id.* Moreover, "[p]rior to taking any statements from [Defendant Morgan] regarding the pizza robberies," the detective told Defendant Morgan that "he would inform the district attorney of [Defendant Morgan's] cooperation and . . . he would try to help him join the Navy." *Id.* In response, Defendant Morgan admitted his participation in the robberies. *Id.*

Prior to trial, Defendant Morgan filed a suppression motion and claimed that, under *Gibbs*, his admission concerning the pizza robberies must be suppressed, as the detective provided him with an "impermissible inducement" in exchange for waiving his right to remain silent. The trial court suppressed Defendant Morgan's statements and, on appeal, this Court affirmed. We held:

> In *Gibbs*, the Supreme Court concluded its decision by holding "authorities are not permitted to employ inducements which impair in any way a suspect's right to his own

- 10 -

unfettered evaluation of the need for legal counsel. *Miranda* and its progeny . . . otherwise would make no sense." *Gibbs*, 553 A.2d at 411. This pronouncement, applied in *Gibbs* to the right to counsel, was also intended by the *Gibbs* Court to extend to all of the rights elucidated in *Miranda* and subsequent derivative case law, including the right to remain silent. . . .

It is the inducement which leads to overcoming resistance to police procedures with which *Gibbs* is concerned and not the specific right waived; nor is it dispositive whether the inducement occurred before or after a *Miranda* warning. *Gibbs* speaks to the fact that police cannot deliver what they promise in the inducement and, therefore, waiver of a right based upon a false promise cannot be fairly accepted as a knowing and voluntary waiver.

*Morgan*, 606 A.2d at 469 (emphasis omitted).

On appeal, Appellant claims that his case is similar to *Gibbs* and *Morgan* because, during Appellant's December 10, 2019 interview with Detective Ziegler, Detective Zeigler falsely "promised" Appellant that the detective "would inform [Appellant] when he needed to . . . seek the assistance of counsel" in exchange for Appellant "giving up his right to silence" and his right to counsel. Appellant's Brief at 14. Appellant further claims that the incriminating statements he made to the Victim during the police-recorded, January 28, 2021, telephone call between himself and the Victim must be suppressed, as those statements constitute the "fruit" of this interference with his right to counsel and his right against self-incrimination. Appellant's claim fails.

It is true that, during their December 10, 2019 meeting, Detective Zeigler told Appellant multiple times that he "would be in touch" with Appellant

- 11 -

at a later date; however, Detective Zeigler's words cannot rationally be construed to mean that the detective "would inform [Appellant] when [Appellant] needed to . . . seek the assistance of counsel." **See** Appellant's Brief at 14. Certainly, during the suppression hearing, the trial court watched video of the non-custodial, December 10, 2019 meeting between Appellant and Detective Ziegler. After watching this video, the trial court came to the factual conclusion that Appellant "was not induced into providing incriminating information to the police." **See** Trial Court Opinion, 6/14/22, at 5. This factual finding is supported by the record and is thus binding on this Court. **See Mbewe**, 203 A.3d at 986; **see also supra** at **2-5. Therefore, as there was no "inducement" in this case, Appellant's claim on appeal necessarily and immediately fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2024