J-S77006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.F., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.R., | |
| Appellant | No. 260 MDA 2017 |

Appeal from the Order Entered January 5, 2017
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 13411-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JANUARY 12, 2018**

K.R. (Appellant) appeals from the January 5, 2017 order that granted

J.F.'s (Appellee) petition seeking a protection from abuse (PFA) order against

K.R.  After review, we affirm.

In his brief, K.R. lists the following four issues for our review:

[1.]  Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is insufficient evidence to support the court's findings?

[2.]  Did the trial court err in failing to find that the Appellee/Petitioner did not prove, by substantial, competent evidence pursuant to section 6107(a) of the Protection from Abuse Act, the allegation of abuse by a preponderance of the evidence?

_____

[*] Former Justice specially assigned to the Superior Court.

[3.] Did the trial court fail to review the evidence in the light most favorable to the Appellant/Defendant and grant the Appellant the benefit of all reasonable inferences, in determining whether the evidence was sufficient to sustain the court's conclusions by a preponderance of the evidence?

[4.] Was the trial court's decision in the instant case contrary to law and in error because it failed to find that protection from [a]buse orders are intended to protect individuals from immediate danger?

Appellant's brief at 4.[1]

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough and well-reasoned opinion of the Honorable Joseph F. Sklarosk, Jr., dated April 17, 2017. We conclude that Judge Sklarosk's opinion accurately disposes of the issues presented by Appellant on appeal and we discern no abuse of discretion or error of law.[2] Accordingly, we adopt Judge Sklarosk's opinion as our own and affirm the order appealed from on that basis.

---

[1] Although Appellant lists four issues in the statement of questions involved section of his brief, the argument section of his brief is not delineated under separate headings as required by Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued….").

[2] We also note that Appellant discusses a hearsay argument in his brief that is not referenced in any way in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Thus, that argument is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement … are waived.").

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/12/2018</u>

*J.F.*

              **Plaintiff**

*K·R·*    vs.

              **Defendant**

                   :    **COURT OF COMMON PLEAS**
                   :    **OF LUZERNE COUNTY**
                   :
                   :    <u>CIVIL ACTION-----PFA</u>
                   :
                   :    **NO. 13411 OF 2016**

<u>**OPINION**</u>

*K.R.*

Defendant     appeals from the January 5, 2017 Order granting Plaintiff *J.F.'s* Petition for Protection from Abuse ("PFA") against him. Defendant seeks appellate review arguing that said Order was entered in error. This Court disagrees and recommends that this appeal be dismissed or, in the alternative, that our Order be affirmed.

Plaintiff and Defendant lived together and had an intimate relationship that ended after three years in 2015. (N.T. 1-5-17 PFA Hearing p.2-3). Since the end of the relationship, Defendant continued to contact Plaintiff through phone calls, emails, Facebook messages, by contacting Plaintiff's family members, and by coming to her place of work. Id. at p.3, l.10-13. Plaintiff did not want the Defendant to contact her. Id., at p.11, l.2-3. Plaintiff introduced a five page log of phone calls and messages beginning on November 17, 2015. (Plaintiff's Exhibit 3) She testified that the messages varied from mild calls to "angry ones." Id. at p.7, l.24. Plaintiff testified Defendant has a firearm and that he sent her a Facebook message in May of 2015 reading, "I wish I knew. I have a loaded nine millimeter wants to start barking."[1] (Plaintiff's Exhibit 4); Id. at p. 9, l. 6-12. In the Spring of 2016, Defendant came uninvited to her workplace. Id. at p. 10, l. 15. Plaintiff's mother testified that she had received a number of text messages from the Defendant,

---

[1] It appears from the testimony that the parties were still in a relationship when the message about the 9 mm was sent. Defendant also testified that he sold the 9mm Taurus firearm on February 22, 2015, while the parties were still in a relationship. Id. pp. 45-46.

1

many of them inquiring about the Plaintiff. Id. at pp. 21-29. Defendant sent her a text message on December 24, 2016 with a picture of him and his children saying "Merry Christmas." (Plaintiff's Exhibit 5); Id. at p. 10, l. 4-8. Plaintiff sought the instant PFA following the Defendant's most recent contact with her: a message Defendant sent to her business's Facebook page on December 29, 2016 reading, "I heard about what you said. Ur business will crash to the ground if I have anything to do with it. I didn't say anything bad to u. U have people attacking me. U will go down for this and ur business will go down for this."[2] (Plaintiff's Exhibit 1); Id. at p. 4, l. 23-25; p. 5, 1-2. Finally, Plaintiff's uncle, David Abraham, a police officer, testified that he received a message, also sent by Defendant on December 29, 2016, reading, "I would never hurt Janelle, I just wanted to see how she was doing. She is saying terrible things about me that aren't true and I wanted you to know that." (Plaintiff's Exhibit 6); Id. at p. 30, l. 22-25. The next day, December 30, 2016, Plaintiff filed the Petition for Protection from Abuse. Plaintiff testified that she has "been scared for the last two years" because Defendant "has not given up and at this point I'm terrified." Id. at p.5, l.16-20. Plaintiff also testified that Defendant has been diagnosed as bipolar, a statement which was confirmed by Defendant. Id. at p. 5, l.18; p. 47, l. 22. Despite the fact that Defendant has never physically abused the Plaintiff, Plaintiff stated that Defendant "told [her] countless times [she] should die." Id. at p.8, l. 21; p. 16, l. 15-16.

Defendant testified that he never abused or threatened Plaintiff. Id. at p. 43, l. 6-22. He testified that he did not send any of the Facebook messages referred to in Plaintiff's testimony and

---

[2] Plaintiff did not testify as to the date that Exhibit 1 was received. However, when questioned by her counsel ("I direct your attention to his most recent communication with you"), Plaintiff identified the threatening Facebook message entered into evidence as Exhibit 1. Handwritten on Exhibit 1 was "Messages to my business page. Sent 12/24 and 12/29", and further testimony indicated that another Facebook message was sent to the Plaintiff's business page on 12/24/16 and contained the same handwritten message. The Plaintiff filed the PFA Petition on December 30, 2016. The Court finds that the message sent in Exhibit 1 was sent on December 29, 2016.

2

identified as Exhibits 1, 4, and 6. Id. at pp. 38-42. He did admit to sending the text message and email, and making the phone calls in Exhibits 2, 3, and 5. Id. at pp. 38-42. Defendant claimed that while the parties were together he, his family, his friends, and the Plaintiff were all harassed from "numerous, numerous" Facebook accounts that were created by unknown individuals. Id. at p. 36, l. 17-22. Defendant suggested that the Facebook messages received by Plaintiff may have come from one of the accounts that were created to harass him. Id. at p. 39, l. 2-4. When asked if he had any evidence of said messages created to harass him, Defendant said he had deleted them. Id. at p. 48, l.14.

Plaintiff argued that the PFA should be granted because Defendant had engaged in a course of conduct which placed her in reasonable fear of bodily injury. We agreed and granted the final PFA Order after the hearing on January 5, 2017.

Defendant filed his Notice of Appeal on February 6, 2017. After being ordered to do so pursuant to Pa.R.A.P. 1925(b), Defendant filed a timely Concise Statement of Errors Complained of on Appeal ("Statement") on February 24, 2017. Plaintiff filed her Response to Defendant's Statement on March 6, 2017. Defendant's Statement consists of fourteen (14) separate allegations of error relating to the sufficiency of the evidence, credibility of the parties, abuse of discretion, and two allegations which contend that this Court violated his due process rights.

When Defendant's Statement is reviewed, it is clear that not all of the fourteen allegations are specific as to what errors were committed or how discretion was abused. Failure to support a claim of error with at least minimal specificity renders the claim waived.

Pa.R.A.P. 1925(b) provides in pertinent part:
4) *Requirements; waiver.*

    (i)    The Statement shall set forth only those rulings or errors that the appellant intends to challenge.

3

(ii)     The Statement shall concisely identify each ruling or error that the appellant intends to challenge **with sufficient detail to identify all pertinent issues** for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement.

..................................................................................

(v)     Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court...

..................................................................................

(vii)   Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

(Emphasis supplied)

If Defendant wants to preserve a claim that the evidence was insufficient, or that the court abused its discretion, he is required to identify with sufficient detail how the court erred. Defendant's Statement includes vague allegations that this Court erred, for example, "in failing to grant the entry of judgment in favor of the Defendant"; "in failing to find that a preponderance of the evidence is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence"; "in failing to find that the Petitioner did not meet her burden of proof on her Petition for Protection of Abuse"; "The Court's finding in favor of the Petitioner in this matter is against the evidence"; "This Honorable Court's decision was against the weight of the evidence"; "This Honorable Court's decision was contrary to law"; and "The Court's decision constituted an abuse of discretion."

A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no concise statement at all. Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa. Super. 2001).[3] "When an appellant fails adequately to identify in a concise

---

[3] "Since the Rules of Appellate Procedure apply to criminal and civil cases alike, the principles enunciated in criminal cases construing those rules are equally applicable in civil cases." Lineberger v. Wyeth, 894 A.2d 141, 148 n.4 (Pa. Super. 2006).

4

manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000). "Even if the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived." Commonwealth v. Heggins, 809 A.2d 908, 912 (Pa. Super. 2002). Appellant's Statement fails to preserve all of his allegations of error. Alternatively, in the event it is determined that Defendant has not waived any appellate argument, we recommend that our Order be affirmed since no error was committed.

While Defendant has raised fourteen allegations of error in his Statement, they can be broken down into four main issues. They are as follows: (1) Whether there was sufficient evidence to enter the final PFA Order; (2) Whether the court was correct in determining the credibility of the parties' testimony; (3) Whether the court abused its discretion in entering the PFA Order; and (4) Whether the court violated the Defendant's due process rights by not holding a hearing on the allegations raised in the petition to determine whether they were sufficient to establish an immediate and present danger of abuse.

With regard to the first issue, Defendant alleges there was insufficient evidence to enter the PFA Order. Defendant also makes a number of allegations that the Court erred in failing to find that the Petitioner did not prove the allegation of abuse by a preponderance of the evidence, and very generally that the Court erred in failing to grant the entry of the judgment in favor of the Defendant.

It is well settled that when a sufficiency of the evidence claim is raised on appeal, the evidence is weighed "[i]n the light most favorable to the petitioner and granting [her] the benefit of all reasonable inferences, [to] determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of evidence." Fonner v. Fonner, 731 A.2d 160, 161 (Pa.

5

Super. 1999). The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." Mescanti v. Mescanti, 956 A2d 1017, 1020 (Pa. Super. 2008). Applying the proper standard of review, the appellate courts must determine that the evidence, when considered in the light most favorable to the Plaintiff, supports the PFA court's determination that Defendant's conduct has created a reasonable fear of bodily harm and as such there is no error in the PFA court's determination.

A PFA order may be issued "to bring about a cessation of abuse of the plaintiff..." 23 Pa.C.S. § 6108. The PFA Act's ("Act") definition of abuse includes:

> "Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury...

23 Pa.C.S.A. §6102

Since Plaintiff is clearly a protected person under the Act as she and Defendant were "sexual or intimate partners," the question here is whether Defendant's actions rise to the level required under the Act. We found by a preponderance of the evidence that Defendant had abused Plaintiff as defined by § 6102(a)(5).

The purpose of the Act is to protect the victims of domestic violence from the perpetrators of such abuse. *See* Snyder v. Snyder, 629 A.2d 977, 981 (Pa.Super. 1993) (the primary goal of the Act is not retrospective punishment but to "advance prevention of physical and sexual abuse.") In a case similar to the instant matter, the Superior Court held that threatening phone messages and emails including death threats, and defendant's refusal to stop contacting the victim despite her

6

requests that he do so were sufficient to establish abuse for a PFA order. R.G. v. T.D., 672 A.2d 341 (Pa. Super. 1996).

Here, Defendant has continued to contact the Plaintiff for a period of fifteen to eighteen months after the relationship ended. He has sent emails, text messages, phone calls, Facebook messages, contacted her family members, and he has come to her workplace. (N.T. p. 3, l. 10-13). Although Defendant has never physically abused Plaintiff, he has threatened her "countless times" in the past and told her she should die. Id. at p. 8, l.21; p. 16, l. 15-16. Plaintiff filed the PFA Petition after receiving a message sent by Defendant that threatened that both the Plaintiff and her business "will go down" if the Defendant has "anything to do with it." Id. at p. 4-5.

We particularly found troubling the combination of the threats of violence against Defendant and the length of time Defendant continued to contact the Plaintiff despite her repeated assertions that she did not want any contact with him whatsoever. The combination of the threats of violence and the fact that the unwanted contact continued for well over a year support a finding of abuse. Defendant testified that he did not send any of the Facebook messages and put forth the theory that the messages received by the Plaintiff may have come from someone trying to harass him, but he had no evidence that such fake Facebook accounts existed. Defendant's frequent, insistent, and long-term contact with the Plaintiff and her relatives, and the threats that have been made by him, placed Plaintiff in reasonable fear of bodily injury. As we said at the conclusion of the hearing: "I am troubled to an extent that apparently [Defendant] is finding it difficult to move on. I agree with counsel that it's never easy to come out of certain relationships, and a lot of times the longer the relationship the harder it is to move on. You've got to move on. You have—the evidence has shown me that it's taken too long for you to move." (N.T. p. 51, l.8-15). We also find it significant that it does not appear that the Defendant's attempted contacts with the Plaintiff

7

have slowed down as time has passed. In the six day period before the Plaintiff filed the PFA petition, Defendant made three separate instances of contact, and one of them contained the overt threat that both the Defendant and her business would "go down." Thus, we found that the evidence was sufficient to sustain our finding of abuse by a preponderance of the evidence.

For his second issue, Defendant alleges that the court erred in its credibility determinations. Our appellate courts generally defer "to the credibility determinations of the trial court as to witnesses who appeared before it." Thompson v. Thompson, 963 A.2d 474, 477 (Pa. Super.2008). Moreover, it is well established that the finder of fact is free to believe all, part, or none of the evidence, and it is within the province of the trial judge, sitting without a jury, to judge credibility of the witnesses and weigh their testimony. Commonwealth v. Carter, 546 A.2d 1173, 1182 (Pa. Super. 1988). Consequently, credibility determinations are generally not subject to review. Id. During the hearing in the instant case, this Court found that Plaintiff stated with a great deal of credibility that she "has been scared for the last two years" because Defendant "has not given up and at this point I'm terrified." N.T. p. 5, l. 16-20. Plaintiff entered text messages, phone logs, and Facebook messages into evidence and presented two witnesses showing the Defendant's long history of attempts to contact her, some of which were threatening. Although Defendant testified that he had not sent any of the threatening messages, this Court did not find him to be an entirely credible witness.

Defendant's third issue speaks to whether this Court abused its discretion. Defendant alleges that this court's granting of a final PFA order was against the evidence, was against the weight of the evidence, was contrary to law, and that this court abused its discretion by ignoring or misapplying the law, exercising its judgment for reasons of partiality, prejudice, bias or ill will, and/or arrived at a manifestly unreasonable decision. When reviewing a trial court's actions in a

8

PFA case, the appellate court is to review the trial court's legal conclusions for an error of law or abuse of discretion. Ferko-Fox v. Fox, 68 A.3d. 917, 920 (Pa. Super. 2013). "Abuse of discretion is defined as follows: "Discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge." Commonwealth v. Widmer, 744 A.2d 745, 754 (Pa. 2000). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill will." Commonwealth v. Jackson, 785 A.2d 117, 118 (Pa. Super. 2001). As discussed herein, the testimony at the PFA hearing established by a preponderance of the evidence that Defendant knowingly engaged in a course of conduct of repeatedly committing acts towards Plaintiff under circumstances which placed Plaintiff in reasonable fear of bodily injury.

Finally, Defendant contends in his fourth issue "that the trial court violated his due process rights by not holding a hearing on the allegations raised in the petition to determine whether they were sufficient to establish an immediate and present danger of abuse." Defendant makes a separate allegation that "[t]he Court erred in not finding that PFA orders are intended to protect individuals from immediate danger, the protection cannot come at the expense of a Defendant's due process rights." In our judgment, this issue is without merit although we believe it has been waived.

Defendant's allegation of error is exceedingly vague so that it is difficult to ascertain exactly to what Defendant is objecting. This should result in waiver. In any event, this Court held a full adversarial proceeding on January 5, 2017. Since Defendant attended and testified at the

9

hearing and was represented by counsel who cross-examined the Plaintiff and her witnesses, his due process rights were not violated.

In light of all of the above, this Court would recommend that the Defendant's appeal be dismissed for failure to adequately plead and identify the issues sought to be pursued on appeal pursuant to Pa.R.A.P. 1925(b). Alternatively, should Defendant's appeal not be dismissed, the January 5, 2017 final PFA Order should be affirmed for the above-stated reasons.

ORDER ENTERED SEPARATELY AS PAGE 11