The People of the State of New York, Respondent, v Jeffrey Rockefeller, Appellant. [931 NYS2d 807]—

Malone Jr., J.

Defendant was charged by indictment with making a terroristic threat, stalking in the third degree and aggravated harassment in the second degree. The charges stemmed from allegations that defendant threatened to kill Gary Gordon, an investigator for the Rensselaer County District Attorney's office. Following a jury trial, defendant was acquitted of making a terroristic threat, but convicted of the crimes of stalking in the third degree and aggravated harassment in the second degree. Prior to sentencing, defendant unsuccessfully moved, pro se, pursuant to CPL 330.30 to set aside the verdict as repugnant. County Court thereafter sentenced defendant to one year in prison on each conviction, with the sentences to run concurrently. Defendant appeals.

We are not persuaded by defendant's contention that the verdict is against the weight of the evidence.* With respect to stalking in the third degree, defendant argues that there is no evidence that Gordon was in reasonable fear of harm or injury as a result of defendant's alleged conduct. We disagree. Three individuals testified that defendant had approached them and made statements about Gordon that were of a threatening nature. To one witness, defendant stated that Gordon had ruined his life and that he wanted to beat Gordon to death. Two others testified that defendant made comments to them that Gordon was "a dead man." Gordon testified that, between August 2008 and March 2009, he received numerous threatening calls on his work-issued cell phone from defendant, including a call in August 2008 during which defendant told Gordon to "watch [his] back" and that Gordon was "a f. . .ing dead man." Gordon also testified that, during a call on March 9, 2009, defendant told him that he was "going to burn down [Gordon's] family's house [in the City of Troy, Rensselaer

---

* To the extent that defendant also challenges the legal sufficiency of the evidence as to the conviction of stalking in the third degree, such claim was not properly preserved at trial. However, as part of our weight of the evidence review, we evaluate "the sufficiency of the evidence as to the elements of the charged crimes" (*People v Andrews*, 78 AD3d 1229, 1230 [2010], *lv denied* 16 NY3d 827 [2011]).

County] and kill everybody inside of it." Gordon stated that as a result of defendant's threats, he feared for his and his family's safety and took time off from work to protect them until the situation was resolved. Based on this evidence, the jury could rationally conclude that Gordon's fear was objectively reasonable given the evidence of " 'express or implied threat[s] of violence' " against Gordon and his family (*People v Clark*, 65 AD3d 755, 758 [2009], *lv denied* 13 NY3d 906 [2009], quoting *People v Demisse*, 24 AD3d 118, 119 [2005], *lv denied* 6 NY3d 833 [2006]).

With respect to the conviction of aggravated harassment in the second degree, defendant contends that there is no proof that he made the threatening phone calls to Gordon. However, Gordon testified that he had known defendant for more than 17 years, had previously given defendant's paramour his cell phone number and recognized defendant's "distinctive voice" on the telephone. Gordon also testified that, during one telephone call, defendant discussed events that had involved both Gordon and defendant and stated his belief that defendant made the threats against him because he had been involved in an investigation and defendant "was not happy with the results." Defendant's paramour testified in his defense. She acknowledged that Gordon had given her a telephone number because she previously had "business" with him, but denied that it was his cell phone number. She also claimed that she was with defendant all day on March 8, 2009 and did not see him make any telephone calls. Viewing the evidence in a neutral light, and according deference to the jury's assessment of the witnesses' credibility, the verdict as to each count is supported by the weight of the evidence (*see People v Phelan*, 82 AD3d 1279, 1281-1282 [2011], *lv denied* 17 NY3d 799 [2011]).

We are not convinced that County Court erred by permitting a witness to identify herself as defendant's probation officer and then to testify as to statements defendant made to her regarding Gordon. Although defendant claims that allowing the witness to identify herself as his probation officer was prejudicial because it indicated to the jury that he had a criminal record, the record reflects that County Court appropriately weighed the probative value of that evidence against the potential prejudicial effect before permitting the witness to testify (*see People v Asai*, 66 AD3d 1138, 1141 [2009]). Further, the notice required by CPL 710.30 is required only when the "[P]eople intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible" (CPL 710.30 [1]).

Here, defendant reported to the probation officer regarding a previous conviction and there is no indication that the probation officer knew that charges had been filed against defendant for his threats against Gordon. Defendant's statements regarding Gordon were not elicited by the probation officer but, rather, were spontaneously offered by defendant. Inasmuch as routine meetings with a probation officer are not considered custodial, and defendant had no obligation to report potential future criminal activity (*see generally People v Edwards*, 154 AD2d 150 [1990]), there was no question as to the voluntariness of defendant's statements and, thus, CPL 710.30 notice was not required (*see People v Greer*, 42 NY2d 170, 178 [1977]; *People v Early*, 85 AD2d 752, 752 [1981]).

Finally, neither defendant's contention that the verdict is repugnant nor his claim of prosecutorial misconduct was preserved for our review.

Mercure, J.P., Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

