People v Albert (2019 NY Slip Op 03227)





People v Albert


2019 NY Slip Op 03227


Decided on April 26, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


1101 KA 14-01531

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MICHAEL A. ALBERT, ALSO KNOWN AS GOTTI, DEFENDANT-APPELLANT. 






KIMBERLY J. CZAPRANSKI, FAIRPORT, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Vincent M. Dinolfo, J.), rendered July 30, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him following a jury trial of murder in the second degree (Penal Law
§ 125.25 [1]) stemming from a homicide that occurred in 2006. Although defendant was not indicted for the crime until 2013, we reject his contention that he was entitled to a Singer hearing to explore the reasons for the People's delay in procuring the indictment inasmuch as "the record provided County Court with a sufficient basis to determine whether the delay was justified" (People v Rogers, 103 AD3d 1150, 1151 [4th Dept 2013], lv denied 21 NY3d 946 [2013]; see People v Smith, 60 AD3d 706, 707 [2d Dept 2009], lv denied 12 NY3d 859 [2009]).
Defendant further contends that the court erred in denying that part of his omnibus motion seeking to preclude statements that he made to a private citizen who was surreptitiously recording the statements for law enforcement agents. It is undisputed that the People failed to provide defendant with a CPL 710.30 notice with respect to those statements, and we reject the People's contention that no notice was required because the citizen was not a public servant at the time defendant made his statements to her. Although the statute does not require notice of "admissions made to private parties who were not police agents" (People v Mirenda, 23 NY2d 439, 448 [1969] [emphasis added]; see People v Bryant, 144 AD3d 1523, 1524 [4th Dept 2016], lv denied 28 NY3d 1143 [2017]; cf. People v Stern, 226 AD2d 238, 239 [1st Dept 1996], lv denied 88 NY2d 969, 1072 [1996]), we agree with our dissenting colleagues that the citizen in this case was acting as a police agent at the time she recorded the statements inasmuch as she was acting "at the instigation of the police . . . to further a police objective" (People v Ray, 65 NY2d 282, 286 [1985]; see People v Eberle, 265 AD2d 881, 882-883 [4th Dept 1999]; cf. People v Smith, 262 AD2d 1063, 1063 [4th Dept 1999], lv denied 93 NY2d 1027 [1999]).
We respectfully disagree with our dissenting colleagues, however, on the issue whether the failure to provide the CPL 710.30 notice warrants preclusion of those statements. We conclude that it does not. Where, as here, there is "no colorable basis for suppression of the statement, the failure to give notice [constitutes] a mere irregularity not warranting preclusion" (People v Clark, 198 AD2d 46, 47 [1st Dept 1993], lv denied 83 NY2d 870 [1994]; see People v Rockefeller, 89 AD3d 1151, 1152-1153 [3d Dept 2011], lv denied 20 NY3d 1064 [2013]; see also People v Garcia-Lopez, 308 AD2d 366, 366 [1st Dept 2003], lv denied 1 NY3d 572 [2003], cert denied 541 US 1078 [2004]; see generally People v Greer, 42 NY2d 170, 178-179 [1977]). In our view, there is no colorable basis for suppression of defendant's statements to the private citizen. There is no dispute that defendant voluntarily went to the citizen's home and that he was [*2]interested in pursuing a romantic relationship with her. During the entire conversation, wherein defendant admitted committing the homicide, the private citizen made no explicit or implicit promises that she would engage in sexual relations with defendant. Rather, it was defendant who offered to tell her anything she wanted to know after she expressed that she was afraid of him, and then provided her with all of the details concerning the homicide. We thus conclude that the private citizen did not make any statement or engage in any conduct that "create[d] a substantial risk that . . . defendant might falsely incriminate himself" (CPL 60.45 [2] [b] [i]; see People v Bradberry, 131 AD3d 800, 802 [4th Dept 2015], lv denied 26 NY3d 1086 [2015]). If anything, the citizen's expressed fear of defendant would have had a higher likelihood of inducing defendant to deny participation in the homicide. Although the private citizen ultimately engaged in sexual relations with defendant later that night, the recording establishes that she made no explicit or implicit promises that she would do so (cf. Commonwealth v Lester, 392 Pa Super 66, 67-73, 572 A2d 694, 695-698 [1990], appeal denied 527 Pa 609, 590 A2d 296 [1991]). The fact that defendant hoped his confession would endear him to the citizen and convince her that he was worthy of her sexual favors does not provide any arguable basis to believe that his statements were anything but " spontaneous and uncontestably voluntary' " (People v Smith, 118 AD3d 920, 921 [2d Dept 2014], lv denied 24 NY3d 1089 [2014], reconsideration denied 25 NY3d 992 [2015]). We thus further conclude that the court did not err in refusing to instruct the jury regarding the voluntariness of his statements to that private citizen; there was no evidence at trial "presenting a genuine issue of fact concerning the voluntariness of [those] statements" (People v Clyburn-Dawson, 128 AD3d 1350, 1352 [4th Dept 2015], lv denied 26 NY3d 966 [2015]; see People v Nelson, 133 AD3d 1228, 1228 [4th Dept 2015], lv denied 27 NY3d 1003 [2016]; see generally People v Cefaro, 23 NY2d 283, 288-289 [1968]).
We reject defendant's contention that the court erred in refusing to suppress statements that he made to law enforcement personnel without the benefit of Miranda warnings. Although defendant was incarcerated on an unrelated offense, he was not subjected to custodial interrogation inasmuch as "[t]here was no added constraint' that would have led defendant to believe that some other restriction had been placed on him over and above that of ordinary confinement in a correctional facility' " (People v Boyd, 159 AD3d 1358, 1362 [4th Dept 2018], lv denied 31 NY3d 1145 [2018]; see People v Ayala, 27 AD3d 1087, 1088 [4th Dept 2006], lv denied 6 NY3d 892 [2006]; see generally People v Alls, 83 NY2d 94, 100 [1993], cert denied 511 US 1090 [1994]). We thus conclude that Miranda warnings were not required (see Ayala, 27 AD3d at 1088; see generally People v Huffman, 41 NY2d 29, 33 [1976]). Defendant further contends that the court erred in failing to instruct the jury on the voluntariness of his statements to law enforcement personnel. That contention is not preserved for our review inasmuch as he did not seek such an instruction for those statements (see People v Thomas, 96 AD3d 1670, 1673 [4th Dept 2012], lv denied 19 NY3d 1002 [2012]). In any event, the contention lacks merit where, as here, there was no evidence in the trial record that would raise a factual issue concerning the voluntariness of those statements (see Clyburn-Dawson, 128 AD3d at 1351-1352; see generally Cefaro, 23 NY2d at 288-289).
During jury selection, defendant raised Batson challenges with respect to two prospective jurors. We agree with the People that they provided race-neutral reasons to support striking those jurors. The first juror's disclosure that her father and brother had criminal convictions was offered by the People as the basis for their challenge and constitutes a race-neutral reason to strike a juror (see e.g. People v Garcia, 143 AD3d 1283, 1284 [4th Dept 2016], lv denied 28 NY3d 1184 [2017]; People v Ball, 11 AD3d 904, 905 [4th Dept 2004], lv denied 3 NY3d 755 [2004], lv denied 4 NY3d 741 [2004]). The second prospective juror disclosed that he had recently read two books by a writer the prosecutor described as "a black revolutionary-type writer," who had "very antigovernment [sic], anti-law-and-order type views." Contrary to defendant's contention, the prospective juror's "expos[ure] . . . to anti-police' and anti-establishment' sentiments" was a race-neutral reason for the exclusion of that prospective juror (People v Funches, 4 AD3d 206, 207 [1st Dept 2004], lv denied 3 NY3d 640 [2004]).
Defendant's remaining contentions lack merit. We conclude that defendant's right of confrontation was not violated "when an autopsy report prepared by a former medical examiner, who did not testify, was introduced through the testimony of another medical examiner" (People v Acevedo, 112 AD3d 454, 455 [1st Dept 2013], lv denied 23 NY3d 1017 [2014]; see People v Chelley, 121 AD3d 1505, 1506-1507 [4th Dept 2014], lv denied 24 NY3d 1218 [2015], reconsideration denied 25 NY3d 1070 [2015]; see generally People v Freycinet, 11 NY3d 38, 42 [*3][2008]). Further, the court did not err in denying defendant's request for an accomplice charge inasmuch as there was no reasonable view of the evidence that the particular witness "participated in the planning or execution of the crime[]" (People v Jones, 73 NY2d 902, 903 [1989], rearg denied 74 NY2d 651 [1989]; see People v Young, 225 AD2d 1066, 1067 [4th Dept 1996], lv denied 88 NY2d 1026 [1996]). Addressing both the preserved and unpreserved contentions concerning alleged prosecutorial misconduct (see CPL 470.15 [6] [a]), we conclude that the prosecutor did not impermissibly change the theory of the People's case (see generally People v Mateo, 2 NY3d 383, 402 [2004], cert denied 542 US 946 [2004]) and that the remaining instances of alleged impropriety on the part of the prosecutor "were either fair comment on the evidence . . . or appropriate response to arguments made in defendant's summation" (People v Speaks, 28 NY3d 990, 992 [2016]). We conclude that the conviction is supported by legally sufficient evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]) and, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we further conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Finally, we conclude that the sentence is not unduly harsh or severe.
All concur except Centra, J.P., and Dejoseph, J., who dissent and vote to reverse in accordance with the following memorandum: We respectfully dissent because we disagree with the majority's conclusion that the failure of the People to provide a CPL 710.30 notice with respect to statements defendant made to a private citizen who was acting as an agent of the police does not warrant preclusion of those statements.
CPL 710.30 requires, inter alia, that the People serve a defendant with notice, within 15 days after arraignment and before trial, if they intend to offer at a trial "evidence of a statement made by [the] defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible" (CPL 710.30 [1] [a]). "[T]he purpose of CPL 710.30 is to inform a defendant that the People intend to offer evidence of a statement to a public officer at trial so that a timely motion to suppress the evidence may be made" (People v Rodney, 85 NY2d 289, 291-292 [1995]). Our colleagues in the majority conclude that, because there is " no colorable basis for suppression of the statement, the failure to give notice [constitutes] a mere irregularity not warranting preclusion.' " The cases relied on by the majority involve circumstances where there was "no question as to the voluntariness of" the statements (People v Rockefeller, 89 AD3d 1151, 1153 [3d Dept 2011], lv denied 20 NY3d 1064 [2013]; see People v Garcia-Lopez, 308 AD2d 366, 366 [1st Dept 2003], lv denied 1 NY3d 572 [2003], cert denied 541 US 1078 [2004]). The same cannot be said in this case.
"It is for the court and not the parties to determine whether a statement is truly voluntary" (People v Chase, 85 NY2d 493, 500 [1995]), and here we conclude that there is "[a] colorable basis for suppression of the statement[s]" (People v Clark, 198 AD2d 46, 47 [1st Dept 1993]; see generally Commonwealth v Lester, 392 Pa Super 66, 67-73, 572 A2d 694, 695-698 [1990], appeal denied 527 Pa 609, 590 A2d 296 [1991]), i.e., that the statements were involuntary because they were made in exchange for the promise of sexual relations. While we acknowledge that the recorded conversation between defendant and the police agent does not contain an express offer of sexual relations, we conclude that County Court could have inferred from the conversation and the police agent's testimony that defendant made the statements in exchange for an implicit promise of sexual relations. It is our position that, in cases where it is at least arguable that a defendant would "be entitled to a pretrial hearing, the statutory notice must be supplied regardless of the District Attorney's personal opinion that the defendant['s statements were voluntary] and regardless of the fact that, following a hearing, the trial court might reach the same conclusion" (People v Brown, 140 AD2d 266, 270 [1st Dept 1988], lv denied 72 NY2d 955 [1988]). In our view, that position is supported by Chase and People v Greer (42 NY2d 170 [1977]). Indeed, the Court of Appeals recognized that, in Greer, even though it "found that the statement in question was completely voluntary (when discovered by the police in the midst of sexual intercourse, defendant claimed the act was consensual rather than rape but, in response to the officer's question, did not know the victim's name), it precluded the statement for failure of the People to give the required notice" (Chase, 85 NY2d at 500).
Thus, because there is a question here whether defendant's statements to the police agent were voluntary, defendant " had the right to have a court review the circumstances under which the statement[s were] given and to determine [their] voluntariness' " (People v Boone, 98 AD3d [*4]629, 629 [2d Dept 2012], lv denied 20 NY3d 931 [2012], quoting Chase, 85 NY2d at 500). Consequently, we conclude that defendant was entitled to notice of the statements made to the police agent pursuant to CPL 710.30 and that "the People's failure to provide such notice should have served to preclude the admission of [those] statement[s] at . . . defendant's trial" (Boone, 98 AD3d at 629). That error was not harmless, and therefore we would reverse the judgment, grant that part of the omnibus motion seeking to preclude the People from introducing at trial the recorded conversation between defendant and the police agent, and grant defendant a new trial on count one of the indictment (see People v O'Doherty, 70 NY2d 479, 489 [1987]; People v Scott, 222 AD2d 1004, 1004 [4th Dept 1995], lv denied 87 NY2d 1025 [1996]).
Entered: April 26, 2019
Mark W. Bennett
Clerk of the Court